DUPREE HARRIS,

                              Petitioner,

                    -against-

J. LAMANNA,

                              Respondent.

AFFIDAVIT IN OPPOSITION
TO PETITION FOR A WRIT
OF HABEAS CORPUS

17-cv-00080 (AMD)

MORGAN J. DENNEHY affirms as follows:

1.      I am an Assistant District Attorney of counsel to Eric Gonzalez, the Acting

District Attorney of Kings County. I am admitted to practice in New York State and before this

Court.

2.      By agreement with the Attorney General of the State of New York, the District

Attorney of Kings County will represent the respondent in the above-captioned matter.

3.      This affidavit is submitted in opposition to petitioner's pro se petition for a writ of

habeas corpus, dated December 23, 2016. The following statements are made on information

and belief based on the records and files of the Kings County District Attorney's Office.

4.      On September 4, 2001, Wesley Sykes shot and killed Dennis Brown in a park in

the Bedford-Stuyvesant neighborhood of Brooklyn. Several of Brown's friends -- including

Shaquanna Edmonds, Latisha Smith, Naia Hardison, and Bobby Gibson -- witnessed the murder.

Edmonds, Smith, and Hardison identified Sykes in a lineup and gave statements to the authorities

implicating Sykes in the murder. About two months before Sykes's trial was scheduled to begin,

petitioner Dupree Harris (hereinafter "defendant") -- who was Sykes's half-brother -- approached

Edmonds, Smith, and Hardison at various locations in Brooklyn. Over the course of several weeks, he bought them meals and gave them money.

5.    On June 9, 2002, before Sykes's trial, defendant took Smith to the office of Sykes's attorney, Michael Warren. Beforehand, defendant told Smith to tell Warren that Corey McCollough, not Sykes, had shot Dennis Brown. At Warren's office, in defendant's presence, Smith gave an audiotaped statement that was consistent with defendant's instructions. After they left Warren's office, defendant gave Smith $500.

6.    On June 12, 2002, defendant took Edmonds to Warren's office. Beforehand, defendant told Edmonds to tell Warren that McCollough had shot Brown. At Warren's office, in defendant's presence, Edmonds gave an audiotaped statement that was consistent with defendant's instructions. After they left Warren's office, defendant gave Edmonds $500.

7.    On June 24, 2002, defendant took Hardison to Warren's office. Beforehand, defendant told Hardison to tell Warren that McCollough, not Sykes, was the shooter. At Warren's office, in defendant's presence, Hardison gave an audiotaped statement that was consistent with defendant's instructions. After they left the office, defendant gave Hardison $500.

8.    On June 29, 2002, after jury selection for Sykes's trial had been completed, but before the attorneys delivered their opening statements, Travis Ragsdale shot and killed Bobby Gibson. After they became aware that Gibson had been killed, Edmonds, Smith, and Hardison explained the circumstances of their audiotaped recantations to the authorities, and the three witnesses were relocated to protect their safety. Days later, they testified at Sykes's trial and

identified Sykes as the man who had shot and killed Dennis Brown. A jury ultimately convicted Sykes of Brown's murder.[1]

9. For his conduct with respect to the three women, defendant was charged with three counts each of Tampering with a Witness in the Third Degree (New York Penal Law § 215.11[2]) and Bribing a Witness (New York Penal Law § 215.00).

10. A jury subsequently convicted defendant of the three counts of Bribing a Witness, but acquitted him of the three counts of Tampering With a Witness in the Third Degree.

11. On March 17, 2005, defendant was sentenced as a persistent felony offender to concurrent prison terms of fifteen years to life for each count (Demarest, J., at trial and sentence).

12. Defendant appealed from his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department. In his brief, defendant raised the following claims:

    (a)    the trial court should have precluded the prosecutor from eliciting evidence that Bobby Gibson had been shot and killed on the eve of Sykes's trial, because the evidence regarding Gibson's murder was not probative of any material fact, and the evidence was prejudicial due to the fact that the jury might have speculated that defendant was involved in the murder;

    (b)    the trial court had improperly permitted the prosecutor to elicit from Latisha Smith that she overheard defendant tell Edmonds that defendant wanted to speak with Gibson;

---

[1] Sykes was sentenced to a prison term of twenty-five years to life (Gerges, J., at trial and sentence). Sykes's judgment of conviction was affirmed on appeal. People v. Sykes, 5 A.D.3d 509 (2d Dep't 2004).

After a separate jury trial, Ragsdale was convicted of murdering Gibson, and was sentenced to a prison term of twenty-five years to life (Hall, J., at trial and sentence). Ragsdale's judgment of conviction was affirmed on appeal. People v. Ragsdale, 68 A.D.3d 897 (2d Dep't 2009).

(c)     the prosecutor committed misconduct by purportedly arguing to the jury during summation that defendant was involved in Gibson's murder.; and

(d)     the sentencing court had improperly considered a prior allegation of defendant's misconduct, and defendant's sentencing as a persistent felony offender violated his right to a jury trial and to procedural due process.

13.     Defendant filed a <u>pro se</u> supplemental brief in which he asserted the following claims:

(a)     the indictment was facially deficient because it allegedly lacked specific dates, times, places of occurrence, and the names of each witness who was bribed;

(b)     the trial court impermissibly amended the indictment when the court referred to the specific names of the bribed witnesses in the court's final jury charge; and

(c)     the evidence was legally insufficient because the People had failed to establish the existence of an agreement or understanding to influence the witnesses' testimony.

14.     By decision and order dated May 14, 2014, the Appellate Division, by a three-to-one vote, affirmed defendant's judgment of conviction. <u>People v. Harris</u>, 117 A.D.3d 847 (2d Dep't 2014). The majority of the Appellate Division initially held that the evidence of defendant's guilt was legally sufficient, and that the verdict was not against the weight of the evidence. <u>Id</u> at 853. The majority also held that the trial court properly admitted the evidence pertaining to Gibson's murder and the evidence that defendant had said that he wanted to speak with Gibson. <u>Id</u>. at 854-59. The majority further held that defendant's claims pertaining to the prosecutor's summation were largely unpreserved, and that the summation remarks at issue were proper. <u>Id</u>. at 859. In addition, the majority found that defendant's claim that the sentencing court had considered a prior allegation of defendant's misconduct was unpreserved, and that the

claim, as well as his other sentencing claim that his persistent violent felony offender adjudication was unconstitutional, were meritless. Id. at 859-60. Finally, the majority found that defendant's remaining claims (those related to the alleged lack of specificity and improper amendment of the indictment) were unpreserved for appellate review and meritless. Id. at 860.

15. By an order dated July 8, 2014, the dissenting justice in the Appellate Division granted defendant's application for leave to appeal to the New York Court of Appeals. People v. Harris, 23 N.Y.3d 1045 (2014) (Miller, J.).

16. On appeal in the New York Court of Appeals, defendant claimed that this due process rights were violated at his trial for bribing, and tampering with, three witnesses to Dennis Brown's murder when the court permitted the prosecutor to elicit evidence that a fourth eyewitness to the murder, Bobby Gibson, was shot and killed, and that before Gibson was killed, defendant stated that he wanted to talk to Gibson. Defendant argued that that evidence was not relevant and that, even assuming that that evidence was relevant, the probative value of the evidence was outweighed by the prejudice that defendant had suffered from its introduction at trial. Defendant additionally claimed that the prosecutor acted improperly by making summation comments that purportedly "urged the jury to conclude that [defendant] was directly implicated in" Gibson's murder.

17. By decision and order dated October 15, 2015, the New York Court Appeals affirmed the May 14, 2014 decision and order of the Appellate Division. People v. Harris, 26 N.Y.3d 1 (2015). The Court of Appeals held that the evidence of Gibson's murder was relevant for the following reasons: "[i]t showed the state of mind of the three girls and provided an explanation as to why they abandoned their recantations and told police about their deal with

defendant. It also explained why the girls were placed in protective custody prior to trial. Additionally, it allowed the jury to have all of the relevant facts before it to decide whether to credit defense counsel's arguments or the three girls' testimony concerning the charges against defendant." Id. at 5. The Court of Appeals further held that while there was a risk of prejudice that the jury may have linked defendant to Gibson's murder, that risk was minimized by the court's limiting instruction to the jury, and by the prosecutor's remarks in his opening statement and summation that there was no evidence that defendant was involved in Gibson's murder. Id. Thus, the Court of Appeals concluded that the trial court had not abused its discretion when it permitted the prosecutor to elicit evidence of Gibson's murder. Id.

18. By pro se petition dated December 23, 2016, defendant now seeks a writ of habeas corpus. In his petition, defendant raises the same claims that he had raised on his direct appeal and in the New York Court of Appeals. See supra at ¶s 12, 13 and 16. In addition, defendant raises two new claims that he has never presented in State court -- ineffective assistance of counsel and actual innocence.

19. In accordance with this Court's January 10, 2017 order to show cause, the Appellate Division briefs, the New York Court of Appeals Briefs, and the trial transcript are being electronically filed with this opposition, and hard copies are being forwarded to the Court.

20. I certify under penalty of perjury that the foregoing is true and correct.

For the reasons stated in the accompanying Memorandum of Law, defendant's petition for a writ of habeas corpus should be denied.

Dated: Brooklyn, New York
April 6, 2017

Morgan J. Dennehy
Assistant District Attorney
(718) 250-2515

Dupree Harris, 06-A-4847
Shawangunk Correctional Facility
PO Box 700
Wallkill, New York 12589

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MJD 3912

---

DUPREE HARRIS,

                                        Petitioner,

                -against-                                17-cv-00080 (AMD)

J. LAMANNA,

                                        Respondent.

---

## MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR

## A WRIT OF HABEAS CORPUS

Date of Service:  April 6, 2017

# TABLE OF CONTENTS

POINT I –

THE STATE APPELLATE COURTS' DECISIONS DENYING
DEFENDANT'S CLAIMS THAT EVIDENCE OF BOBBY
GIBSON'S MURDER WAS IMPROPERLY ADMITTED AT
TRIAL, AND THAT THE PROSECUTOR MADE IMPROPER
SUMMATION COMMENTS ABOUT GIBSON'S MURDER,
WERE NOT CONTRARY TO, OR AN UNREASONABLE
APPLICATION, OF FEDERAL LAW...................................................................1

POINT II –

DEFENDANT'S CLAIM THAT HIS ENHANCED SENTENCE
IS UNCONSTITUTIONAL IS PARTIALLY BARRED AND
ENTIRELY MERITLESS...................................................................20

POINT III –

DEFENDANT'S CLAIM THAT THE INDICTMENT WAS
DEFECTIVE BECAUSE IT ALLEGEDLY LACKED THE
REQUISITE SPECIFICITY IS PROCEDURALLY BARRED
AND MERITLESS ...................................................................28

POINT IV –

DEFENDANT'S CLAIM THAT THE COURT IMPROPERLY
AMENDED THE INDICTMENT IS PROCEDURALLY
BARRED AND MERITLESS ...................................................................31

POINT V –

THE STATE APPELLATE COURT'S DECISION DENYING
DEFENDANT'S LEGAL INSUFFICIENCY AND WEIGHT OF
THE EVIDENCE CLAIMS WAS NEITHER CONTRARY TO,
OR AN UNREASONABLE APPLICATION OF, FEDERAL
LAW ...................................................................34

POINT VI –

DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL
CLAIM IS UNEXHAUSTED, BUT SHOULD BE DEEMED
PROCEDURALLY BARRED. IN ANY EVENT, DEFENDANT
RECEIVED THE EFFECTIVE ASSISTANCE OF COUNSEL...................................38

POINT VII –

    DEFENDANT'S ACTUAL INNOCENCE CLAIM IS UNEXHAUSTED. IN ANY EVENT, THE CLAIM IS MERITLESS .................................................................................41

CONCLUSION –

    FOR THE AFOREMENTIONED REASONS, DEFENDANT'S PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED .................................................................................43

THE STATE APPELLATE COURTS' DECISIONS DENYING DEFENDANT'S CLAIMS THAT EVIDENCE OF BOBBY GIBSON'S MURDER WAS IMPROPERLY ADMITTED AT TRIAL, AND THAT THE PROSECUTOR MADE IMPROPER SUMMATION COMMENTS ABOUT GIBSON'S MURDER, WERE NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION, OF FEDERAL LAW.

As the first ground in support of his habeas petition, defendant claims that he is entitled to habeas relief because the trial court had improperly permitted the prosecutor to elicit evidence that Bobby Gibson had been shot and killed on the eve of Wesley Sykes's trial. Defendant argues that the evidence regarding Gibson's murder was not probative of any material fact, and that the evidence was prejudicial because the jury might have speculated that defendant was involved in the murder. Defendant also claims that the trial court had improperly permitted the prosecutor to elicit from Latisha Smith that she overheard defendant tell Shaquanna Edmonds that he wanted to speak with Gibson. Finally, defendant claims that the prosecutor committed misconduct by purportedly arguing to the jury during summation that defendant was involved in Gibson's murder. None of these claims entitle defendant to habeas relief, because the decisions of the Appellate Division, Second Department, and of the New York Court of Appeals were neither contrary to, or an unreasonable application of federal law.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim was adjudicated by the state courts on the merits, that review is limited to whether the state court ruling "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), (2); see Mask v. McGinnis, 252 F.3d 85, 88 (2d Cir. 2001).

In this case, defendant's claims concerning the admission of evidence of Gibson's murder, and the prosecutor's summation comments about that murder, were adjudicated on the merits by the Appellate Division and by the Court of Appeals. See People v. Harris, 117 A.D.3d 847 (2d Dep't 2014); People v. Harris, 26 N.Y.3d 1 (2015). The state appellate courts' decisions rejecting defendant's claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent. The "contrary to" clause of 28 U.S.C. § 2254(d)(1) is inapplicable to this case because the Supreme Court has never decided a case involving facts that are materially indistinguishable from the facts of this case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Moreover, the state appellate courts did not unreasonably apply Supreme Court precedent when the courts decided that defendant's claims were without merit.

### The Admission of Evidence Concerning Gibson's Murder Was Proper

Generally, evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a writ of habeas corpus may be issued. See Taylor v. Curry, 798 F.2d 886, 891 (2d Cir. 1983); Jenkins v. Bara, 663 F. Supp. 891, 899 (E.D.N.Y. 1987). A writ of habeas corpus may issue on the basis of the admission or exclusion of evidence only where the exclusion or admission was error as a matter of state law, and the error amounted to the denial of a constitutional right to a fair trial. See Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988); Dey v. Scully, 952 F.Supp. 957, 969-76 (E.D.N.Y. 1997). In addition, even if a defendant can establish that the evidentiary ruling was erroneous and that the error was of a constitutional magnitude, the defendant must still show that the error was not harmless. See Rosario, 839 F.2d at 924; Dey, 952 F.Supp. at 969.

Here, defendant has not established that the trial court's decision to allow the admission of evidence concerning Bobby Gibson's murder was an error as a matter of state law.[2] In New York, "all relevant evidence is admissible unless its admission violates some exclusionary rule." People v. Scarola, 71 N.Y.2d 769, 777 (1988). "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact . . . ." Id. "Once relevancy is established, admissibility becomes a discretionary determination by the trial court as to whether the evidence's probative value is outweighed by any prejudicial impact on the defendant." People v. Wilder, 93 N.Y.2d 352, 357-58 (1999).

Under these standards, the trial court properly exercised its discretion in permitting the People to introduce evidence regarding Gibson's murder and its impact on the three witnesses whom defendant had bribed: Edmonds, Smith, and Hardison. The trial court not only correctly decided that evidence regarding Gibson's murder was relevant to material issues at defendant's trial, but also correctly decided that the probative value of that evidence outweighed the potential for prejudice.

Evidence that Gibson was murdered on the eve of Wesley Sykes's trial was relevant for two reasons relating to the main issue in defendant's case: the credibility of Edmonds, Smith, and Hardison. First, the evidence was relevant to the women's "state of mind," because, as the Appellate Division correctly held, it "explain[ed] why the girls, having recanted their original statements identifying Sykes as Dennis Brown's killer, admitted to the police that they had made

---

[2]  Insofar as defendant is contending that the admissibility of the evidence regarding Gibson's murder is governed by the rules pertaining to the admissibility of evidence of a defendant's uncharged crimes or bad acts, as set forth in People v. Molineux, 169 N.Y. 264 (1901), defendant is wrong. As the Appellate Division correctly held (People v. Harris, 117 A.D.3d 847, 854-55 [2d Dep't 2014]), because Travis Ragsdale, not defendant, murdered Gibson, and because there was no evidence that defendant was involved in that murder, the Molineux rule did not apply to the evidence regarding that murder.

false recantations, and adhered to their original statements." People v. Harris, 117 A.D.3d at 855. There was no dispute at trial that evidence regarding Sykes's trial -- including evidence that Edmonds, Smith, and Hardison testified against Sykes -- was admissible at defendant's trial. In fact, during the pre-trial colloquy regarding the admissibility of evidence of Gibson's murder, defense counsel stated that she agreed with the court's statement, "I see no possibility of excluding evidence of the Sykes trial" (A. 53-54).[3]

In the absence of the evidence regarding Gibson's murder, the prosecution would have been at a great disadvantage in countering defendant's defense, which defense counsel conveyed, explicitly and implicitly, in her opening statement and her summation: that Edmonds, Smith, and Hardison were unreliable witnesses who initially falsely stated that they had seen Sykes shoot Dennis Brown; that defendant approached the three witnesses, not to threaten or bribe them, but merely to clear his brother's name; that defendant properly convinced them to recant their false identifications; and that the witnesses ultimately disavowed those recantations and testified, falsely against Sykes, because law enforcement officials "threaten[ed] to put them in jail," and because the District Attorney's Office gave them benefits in connection with the Office's witness relocation program (A. 163-68, 765, 889-96, 903-07, 909-15). Evidence that it was Gibson's murder -- rather than threats from, or benefits provided by, law enforcement officials -- that motivated Edmonds, Smith, and Hardison to inform law enforcement officials about defendant's conduct toward them and to testify that Sykes was the person who had shot Dennis Brown seriously undermined that defense, in large part because the suggestion that threats from, or

---

[3] Parenthetical numbers preceded by "A" refer to pages of defendant's appendix that he provided to the New York Court of Appeals. The appendix is one of the exhibits that the respondent is electronically filing with these opposition papers. Parenthetical numbers preceded by "V" refer to transcript pages of the voir dire.

benefits provided by, law enforcement officials motivated the three witnesses to turn on defendant, and to adhere to their initial identification of Sykes as the shooter, furthered the defense argument that those witnesses were not credible. As the Appellate Division noted in its decision in defendant's case:

> The admission of evidence bearing on the credibility of key witnesses serves the truth-finding process, in which it is the jury's role to "assess the credibility of witnesses and determine, for itself, what portion of their testimony to accept and the weight such testimony should be given" (People v Negron, [91 N.Y.2d 788, 792 (1998)]; see People v Morris, [21 N.Y.3d 588, 597-98 (2013)]. Evidence that Gibson's death motivated the girls to come forward to the police and admit that they had been bribed by the defendant was particularly important to an assessment of their credibility in this case, since, as noted, a major theme of the defense was that the girls had retracted their recantations because of the money and benefits they received through their participation in the witness protection program.

People v. Harris, 117 A.D.3d at 858.

Moreover, contrary to defendant's contention, the evidence at trial supported the conclusion that it was Gibson's murder -- not threats from law enforcement officials -- that motivated the witnesses to inform law enforcement officials about defendant's conduct toward them and to testify against Sykes. First, Edmonds testified that she had known that Gibson was scheduled to testify against Sykes, and that after she became aware that Gibson had been killed, she thought, "I guess I'm next," and was worried about her "life" (A. 330-32, 364), and Smith testified that when she found out that Gibson had been killed, she became scared (A. 458).

Second, the evidence showed the following: (1) On June 30, 2002 -- the day after Detectives Bond and Mosely had offered to relocate the women and their families for their safety, and the women had declined the offer (A. 198, 244) -- Smith, upon her own initiative, called Detective Bond and said that she had something to tell the detectives; (2) later that day, Smith, in the presence of the other two women, told Detectives Bond and Mosely that defendant

had bought them food, that defendant had taken them to see an attorney, and that defendant had paid them not to testify against Sykes (A. 192-93, 210-12, 245-46); and (3) thereafter, also on June 30, the women accepted ADA Murphy's offer to be relocated (A. 193, 206, 209, 228, 244, 332, 454, 458, 485, 517-21,. 580-81, 606-07). The evidence also showed that following Gibson's murder, the three women ultimately testified against Sykes.

Contrary to defendant's suggestion, the fact that, after Gibson was murdered, the women initially did not contact any law enforcement officials, and that when first contacted by law enforcement officials after that murder, the women did not express any concern about the murder and declined offers to relocate them, was entirely consistent with the conclusion that the Gibson murder ultimately motivated the women to reveal defendant's conduct to law enforcement officials and to testify against Sykes. It is understandable that the fear that Gibson's murder engendered in at least two of the three women -- Edmonds and Smith -- would initially cause them not to cooperate with law enforcement officials. And the fact that the day after Detectives Bond and Mosely approached the three women, Smith, on her own initiative, contacted Detective Bond and conveyed to him that she had something to tell him, and that the three women thereafter informed law enforcement officials about defendant's conduct and ultimately testified against Sykes, demonstrates that after having had more time to contemplate their situation and to think about how to respond to Gibson's murder -- which appeared to be related to the Sykes case -- the women determined that the safer course of action was to cooperate with law enforcement officials and to accept the relocation offer.

The second reason why evidence regarding Gibson's murder was relevant was because Gibson's murder explained why the women were relocated. The relocation of the women was itself relevant because, contrary to defendant's assertion, defense counsel suggested to the trial

court, before jury selection, that she intended to cross-examine the three women about matters relating to their participation in the relocation program, and because the women's receipt of benefits from the District Attorney's Office in connection with their relocations was pivotal to defendant's defense that the women's recantations regarding Sykes were true and that the benefits induced them not only to disavow those purportedly truthful recantations and to testify against Sykes, but also to testify against defendant as well. As the Appellate Division noted in its decision, "In the absence of evidence establishing a legitimate need for the girls' participation in the [relocation] program, the jury would not be able to place the defense argument in proper context." People v. Harris, 117 A.D.3d at 858.

Defendant claims that the reason why the People relocated the women was irrelevant because the People's relocation of the women was itself irrelevant. However, before jury selection, defense counsel suggested to the trial court that she intended to cross-examine the three women about matters relating to their participation in the relocation program. Indeed, the court suggested that it was the court's understanding that defense counsel was going to cross-examine the women about matters pertaining to the relocations, when the court said to defense counsel, "And yet there is a need to bring in the circumstances involving the protection of these witnesses that you are planning to cross-examine regarding what happened during the period of their protection" (A. 54) (emphasis added). Immediately after the court made that statement, defense counsel did not disagree with that statement, but rather stated, "Your Honor, respectfully, if the Court intends to permit that evidence in, then I would ask for a curative instruction immediately demonstrating why there has been no connection whatsoever between the Gibson death and [defendant] whatsoever" (A. 54). If counsel had intended to refrain from cross-examining the women about matters pertaining to their relocations, then counsel surely would have mentioned

this fact when the court was about to rule on the admissibility of evidence regarding Gibson's murder, and when the court had just told defense counsel that because defense counsel was "planning to cross-examine" the witnesses about such matters, "there [was] a need" to "bring in the circumstances involving the protection of these witnesses" (A. 54). Counsel's failure to disagree with the court's statement regarding what defense counsel planed on doing, or to state affirmatively that she was not intending to cross-examine the women about matters pertaining to the relocations, shows that the court's understanding was correct: that counsel in fact had every intention of using such a rich source of impeachment material during the trial.

And defense counsel did extensively cross-examine the women and Detective Investigator Michael Wishner about the benefits that the women had received in connection with their relocations, and about the women's poor conduct with respect to their relocations, including their disruptive behavior and their getting into fights, which resulted in their eviction from some of the hotels in which they were housed (A. 368-78, 486-89, 607-13, 657-69). Moreover -- apparently in an effort to make the witnesses appear less appealing, and, therefore, less credible -- defense counsel asked the witnesses about their dissatisfaction with the amount of benefits that they had received, and about their frequent demands for more money or better housing (A. 367-70, 486-89, 606-12).

Additionally, in her summation, defense counsel argued that the women's relocations were unnecessary because they were not afraid, and suggested that the benefits that they had received in connection with their relocations had induced them to testify against Sykes and against defendant as well (A. 903, 914). In her summation, counsel also referred to the women's misconduct in connection with their relocations (A. 914).

8

Moreover, the probative value of evidence regarding Gibson's murder substantially outweighed the potential for that evidence to cause defendant prejudice. At trial, defendant engaged in a strategy of portraying himself as a person who lawfully had tried to clear his innocent brother's name, and of attacking the credibility of the three women by: (1) portraying them as witnesses who initially falsely identified Sykes as the person who had shot Dennis Brown, thereafter correctly recanted their identifications of Sykes, and then ultimately adhered to their false identifications of Sykes and testified against him solely because of threats from, and benefits provided by, law enforcement officials; (2) portraying the women as witnesses who were also testifying against defendant because of benefits they had received from law enforcement officials; and (3) portraying the women as greedy individuals who engaged in bad behavior in the various facilities where they were placed by law enforcement officials. The evidence regarding Gibson's murder -- as evidence that provided a credible alternative explanation for why the women informed law enforcement officials about defendant's conduct, disavowed their recantations, and testified against Sykes, and as evidence that explained why the women were relocated -- was crucial to combating defendant's strategy.

Defendant contends that the evidence regarding Gibson's murder was prejudicial and should have been excluded primarily because it invited the jury to speculate about defendant's possible involvement in the murder. Defendant's claim is without merit. First, regardless of the prejudicial effect of the evidence, the People were entitled to introduce such evidence to counter defendant's strategy: If the People had been barred from presenting evidence regarding Gibson's death, defendant would have had an unfair advantage, because the People would have been unable to present compelling evidence to counter defendant's defense that the witnesses were not credible, and that the witnesses were motivated to turn against defendant and to testify against

Sykes solely because of threats from, and benefits provided by, law enforcement officials, or to counter defense counsel's suggestion that the District Attorney's Office provided the witnesses with housing and money in order to induce them to testify against Sykes and defendant.

Second, the prejudice resulting from the admission of evidence concerning Gibson's murder was minimal. The prosecutor stated in his opening statement that defendant was charged only with bribing and tampering with witnesses, and that there was no evidence that when Gibson was shot, defendant was anywhere near the scene of Gibson's shooting (A. 158). In addition, the prosecutor said in his summation, twice, that there was no evidence that defendant was involved in Gibson's murder (A. 926, 950). During jury selection, the court informed prospective jurors that defendant was not alleged to have been involved in the murder, and in its final charge, the court delivered a limiting instruction, cautioning the jury that defendant "ha[d] not been charged with causing the death" of Gibson, and that the People had introduced evidence regarding Gibson's death "for the purpose of explaining the state of mind of the three of the [sic] complainants, that is Latisha Smith, Naia Hardison, and Shaquanna Edmonds, and to provide the background for their participation in the witness protection program of the District Attorney's office" (A. 114-15, 974).

Moreover, immediately before summations, the court told the jury, "You are of course limited to the evidence itself. You may not speculate about something not presented to you, but you will use your own good judgment in making this determination" (A. 882). And, in its final charge, the court told the jury, "[Y]ou may not speculate or guess about something that wasn't part of the evidence in the case. You may make reasonable inferences that logically flow from the evidence, but you shouldn't speculate about something that wasn't presented to you" (A. 964). See People v. Harris, 26 N.Y.3d at 5 (any prejudice that may have resulted from the

admission of evidence concerning Gibson's murder was "minimized" by the court's jury instructions and by the fact that "the prosecutor had stated plainly in his opening statement and summation that there was no evidence that defendant was involved").

<u>Smith's Testimony About Hearing Defendant Say That He Wanted to Talk To Gibson Was Properly Admitted</u>.

Defendant claims that the trial court erred when it permitted the prosecutor to elicit from Smith that she had heard defendant say to Edmonds that defendant wanted to talk to Gibson and Corey Brown, who was Dennis Brown's brother and was another witness to the shooting of Dennis Brown (A. 416-17, 453-54). Defendant's claim is meritless.

The testimony at issue was admissible because defense counsel opened the door to that testimony by suggesting to the jury that the existence of a number of witnesses to the Brown shooting, other than Edmonds, Smith, and Hardison, undermined the conclusion that defendant's giving benefits to the three women was motivated by a desire to influence the women's testimony at the Sykes trial. <u>See People v. Mateo</u>, 2 N.Y.3d 383, 425-26 (2004). Defense counsel's failure to dispute the court's statement that defense counsel had made such a suggestion to the jury (A. 834-35) shows that the court's view of what defense counsel had tried to communicate to the jury was correct.

And there is additional support for the conclusion that defense counsel had tried to communicate to the jury that the existence of witnesses to the Brown shooting, other than the three women, was at odds with the conclusion that defendant gave the women benefits in order to influence their testimony at the Sykes trial. Before the prosecutor informed the court that he wanted to elicit the testimony at issue, the prosecutor told the court the following:

> Perhaps, I think [defense counsel] has made the best logical argument for why I think the things are related in this sense. Assume there are nine witnesses to the

murder and nobody was killed. Just nine witnesses. And we have evidence that the defendant approached three of them to convince them not to testify. [Defense counsel's] logic is this, that that doesn't make sense because there are six other witnesses. So why would someone approach just three and not try to do anything to eliminate the other six, and <u>that was her effort to show the large number of witnesses</u>. And the logical implication is clear, and I'm certain she's going to argue to the jury why would he just concern himself with three people when there were other people out there, for that reason the whole [sic], it doesn't make sense in terms of motive.

(A. 276) (emphasis added). Defense counsel did not dispute those statements of the prosecutor regarding what she had tried to communicate to the jury and what she intended to argue to the jury. Defense counsel's failure to dispute the prosecutor's statements, like defense counsel's failure to dispute the court's statements regarding what defense counsel had tried to communicate to the jury, shows that defense counsel had tried to communicate to the jury that the existence of witnesses to the Brown shooting, other than the three women, was at odds with the conclusion that defendant gave the women benefits in order to influence their testimony at the Sykes trial.

Given that defense counsel had attempted to convey that argument to the jury, the testimony at issue was admissible because that testimony was responsive to that argument: The testimony showed that defendant -- in addition to contacting Edmonds, Smith, and Hardison -- also wanted to contact additional witnesses to the Brown shooting, and consequently the testimony countered the argument that because defendant allegedly contacted only three of the witnesses to the Brown shooting, his contacting those three witnesses could not have been motivated by his desire to influence their testimony at the Sykes trial. See Mateo, 2 N.Y.3d at 425-26; People v. Rojas, 97 N.Y.2d 32, 38-40 (2001).

Moreover, for the same reasons that there is no basis for concluding that the admission of evidence regarding Gibson's murder suggested to the jury that defendant was involved in that murder, there is no basis for concluding that the admission of the testimony regarding what

defendant had said to Edmonds suggested to the jury that defendant was involved in Gibson's murder.

<u>Defendant's Claims Regarding the Prosecutor's Summation Are Procedurally Barred. Moreover, the Prosecutor's Summation Comments About Gibson's Murder Were Proper.</u>

Defendant claims that the prosecutor made summation remarks that allegedly suggested, improperly, that defendant had been involved in Gibson's murder. However, defendant's claim is procedurally barred from federal <u>habeas</u> review, because it was rejected by the Appellate Division on the basis of an adequate and independent state ground. Moreover, the Appellate Division's alternative holding, that the challenged summation comments were proper "or otherwise did not warrant reversal," was not contrary to Supreme Court precedent.

A federal court, when reviewing a <u>habeas corpus</u> petition from a state prisoner, cannot consider the merits of a federal constitutional claim when the state court refused to review the merits of the claim on an adequate and independent state ground. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991); <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81 (1977). In this case, the Appellate Division denied defendant's summation error claim on the basis of an adequate and independent state ground when the Court found that the claim was largely unpreserved for appellate review. <u>People v. Harris</u>, 117 A.D.3d at 859.[4] Therefore, the claim was denied on the procedural ground that defendant had failed to comply with New York State's contemporaneous objection rule. New York State's contemporaneous objection rule is an adequate and independent state ground for a decision. <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990); <u>Washington v. LeFevre</u>, 637 F. Supp. 1175, 1176-77

---

[4] The New York Court of Appeals did not decide the summation error claim. <u>See People v. Harris</u>, 26 N.Y.3d at 1-5.

(E.D.N.Y. 1986); see generally Wainwright v. Sykes, 433 U.S. at 85-90. Thus, because the Appellate Division denied this claim on the basis of an adequate and independent state ground, the claim cannot be reviewed by a federal court in a habeas proceeding. See Velasquez v. Leonardo, 898 F.2d at 9; Washington v. LeFevre, 637 F. Supp. at 1176-77.

The fact that the Appellate Division additionally chose to rule on the merits of the claim, after deciding that the claim was unpreserved, does not eliminate the procedural bar. "[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

Defendant has not asserted any cause or prejudice that would excuse him from the effect of his procedural default. See Murray v. Carrier, 477 U.S. 478, 485 (1986). To establish cause for a procedural default, a state prisoner ordinarily must show "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Id. at 488. Here, there was nothing to prevent defendant's trial attorney from objecting to the alleged errors. Moreover, defendant cannot now claim that he was deprived of the effective assistance of counsel due to his attorney's failure to make the necessary objections because defendant failed to raise the claim on his direct appeal. See Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997).

In any event, defendant's claim is meritless and does not entitle him to habeas relief. "The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory powers." Bossert v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citations and internal quotation marks omitted). "[T]he Supreme Court instructed federal courts reviewing habeas claims premised

upon prosecutorial misstatements in summation to distinguish between 'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . [which] amount[s] to a denial of constitutional due process.'" Sales v. Harris, 675 F.2d 532, 541 (2d Cir.), cert. denied, 459 U.S. 876 (1982); see Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974).

"Prosecutorial statements, even though they may be improper or unethical, are usually not enough to warrant granting a petition." Donaldson v. Dalsheim, 508 F. Supp. 294, 297 (S.D.N.Y.), aff'd, 672 F.2d 899 (2d Cir. 1981), cert. denied, 455 U.S. 951 (1982); see Smith v. Phillips, 455 U.S. 209, 221 (1982). A petitioner is entitled to habeas corpus relief on the basis of a prosecutor's summation only if the prosecutor's summation was so fundamentally unfair as to deny the petitioner a fair trial. Donnelly v. DeChristoforo, 416 U.S. at 642-48; Castro v. Sullivan, 662 F. Supp. 745 (S.D.N.Y. 1987).

The prosecutor's comments in this case were not so fundamentally unfair as to deny defendant a fair trial. In fact, all of the challenged summation comments were proper, because either they were responsive to defense counsel's summation remarks or they constituted fair comment on the evidence presented, and none of the comments suggested that defendant was involved in Gibson's murder. See People v. Henderson, 13 N.Y.3d 844, 847 (2009). Given that defense counsel introduced the statement of Travis Ragsdale (the man who had killed Gibson) into evidence for the truth of the allegations made in that statement (A. 828), the prosecutor's remarks regarding the truth of those allegations were proper (A. 924-25). Furthermore, the summation comments at issue were responsive to defense counsel's summation comments that Ragsdale's confession was truthful (compare A. 887 with A. 924-26) and that there had been "hysteria" surrounding Gibson's death (compare A. 887 with A. 950); to defense counsel's suggestion in summation that Corey McCullough, not Sykes, was the person who had shot

Dennis Brown (compare A. 894-95, 904, 906, 912 with A. 924); to defense counsel's remarks suggesting that the District Attorney's Office had, without any basis for doing so, linked Gibson's murder to Sykes's case, in order to justify relocating Edmonds, Smith, and Hardison and providing those witnesses with benefits (compare A. 887, 902-03, 914 with A. 950); and to defense counsel's remarks suggesting that the women ultimately turned against defendant and testified against Sykes, not because of Gibson's murder, but because of threats from law enforcement officials that the women could "be arrested" (compare A. 903, 907 with A. 950-51).

In arguing that the summation comments at issue suggested that defendant was involved in Gibson's murder, defendant misconstrues the meaning of the prosecutor's remarks. Far from suggesting that defendant was involved in Gibson's murder or urging the jury to engage in such speculation, the prosecutor argued merely that, by contrast with the "solid case[s]" against Sykes, Ragsdale, and defendant, it was a matter of speculation whether Gibson's murder was or was not related to Sykes's case. The prosecutor stated:

> Why was Slay [Dennis Brown's brother] the same place as Ragsdale? Why did this murder happen the weekend before the witness was supposed to testify? And this is the thing, you can speculate all you want. As she says, you can say hey, he reached out to three witnesses and a fourth one got killed on that weekend, a person that Latisha Smith said he wanted to talk to. But you know what, that's not evidence. We don't have evidence that he's behind the killing of Bobby Gibson. You don't have evidence that even his brother Sykes did it. Might have. There's a lot of reasons to speculate about it. But, if you don't have evidence, you don't arrest the person for the crime. So much for the witch hunt. Wesley Sykes shot someone in front of a boat load of witnesses. He was identified by everybody. You heard from the detectives, you heard from the prosecutors, nobody named anybody but Wesley Sykes as the killer. At the trial, nobody named Wesley Sykes as the killer except for a little incident that happened in the month before the trial secretly when [defendant] got involved. Wesley Sykes was seen as the shooter. It's a solid case. Travis Ragsdale admitted to killing Bobby Gibson. So there's a solid case against him. And [defendant] intimidated and threatened three witnesses, and there's a rock solid case that evolves around him.

(A. 926-27 [emphasis added]; see also A. 924-26).

In the context of the court's statement to the jury immediately before the summations began -- "You may not speculate about something that's not presented to you" (A. 882) -- the jury would have understood that the prosecutor's summation remarks regarding whether Gibson's murder was related to Sykes's case (including the prosecutor's reference to defendant during the course of those remarks) (A. 924-27) constituted an argument that whether or not Gibson's murder was related to Sykes's case was a matter of speculation and therefore was not a question that the jury should consider.

Furthermore, the following remarks of the prosecutor were a proper part of a broader set of remarks responding to summation remarks of defense counsel that criticized the response of law enforcement officials to Gibson's death as marked by "hysteria," that asserted that Gibson's murder did not make the women fearful, and that suggested that the District Attorney's Office had no legitimate basis for relocating the witnesses but rather used the relocation program to provide the witnesses with benefits for the purpose of inducing them to testify against Sykes and, ultimately, to testify against defendant (A. 887, 902-03, 914):

> The police and D.A.s didn't know what [Smith, Edmonds, and Hardison] knew. The police and D.A. did not know they had been to Warren's office. They didn't know. At least the DA didn't know that they had taken money from Turf [defendant]. So there's a whole lot going on. Bobby Gibson is dead. They don't know who did it. We're not saying the evidence is Turf did it, but nobody knew at that time Turf did it.[5] The police are saying they need protection. They know they've been dealing with the killer's [Sykes's] brother. And Bond had a detective investigate. He said something is not right. I went back. They're acting edgy and strange.

---

[5] The prosecutor did not intend to convey, by the phrase "nobody knew at that time Turf did it" (A. 950), that defendant had killed Gibson, nor would the jury have construed that phrase as meaning that defendant had killed Gibson, given that the phrase was immediately preceded by the prosecutor's statement, "We're not saying the evidence is Turf did it" (id.), and given that the prosecutor had previously told the jury, "We don't have evidence that [defendant's] behind the killing of Bobby Gibson" (A. 926).

(A. 950; <u>see also</u> A. 947-51).

In any event, any alleged errors were harmless and do not warrant the granting of defendant's <u>habeas corpus</u> petition. <u>See</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119 (2007); <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993). First, there was overwhelming evidence that defendant had committed Bribing a Witness with respect to Edmonds, Smith, and Hardison. The women testified convincingly that defendant approached them in the months before the trial of Wesley Sykes, that he bought them food, and gave one of the women, Shaquanna Edmonds, $100 on two different occasions, that he asked them to give to Sykes's attorney false statements that exonerated Sykes and implicated a man named Corey McCollough, and that after the women, in defendant's presence, gave the statements to the attorney, defendant paid them $500 each. The women's testimony was corroborated by the audiotaped statements that they made to Sykes's attorney, by the testimony of Sykes's attorney regarding the circumstances surrounding those statements, and by the testimony of Detectives Bond and Mosely regarding what the women had told them about defendant's conduct. In addition, the prosecutor introduced compelling evidence of defendant's consciousness of guilt, including testimony that established that after the witness bribing came to light, defendant abruptly stopped attending Sykes's trial and ultimately fled to another state, where he was later found living under an assumed name. All of this evidence established that defendant conferred a benefit upon the women, who were witnesses to a murder and who were to testify at a trial, upon an agreement or understanding that their testimony at the trial would thereby be influenced. <u>See</u> N.Y. Penal Law § 215.00.

Moreover, defendant never disputed that he had orchestrated the audiotaped recantations. In fact, at trial, his attorney admitted that defendant had done so, but claimed that Sykes had been falsely accused of murdering Dennis Brown, and that defendant merely had been trying to clear

Sykes's name (A. 904-07). This defense relied upon the jury's concluding that Sykes had not murdered Brown, but the evidence did not support that conclusion: Because Sykes had been identified by each of the three women as the man with the distinctive "messed up" eye who had shot and killed Brown (A. 305, 308, 347, 430, 433, 554, 559), Sykes's identity as the gunman was never in any legitimate doubt. Furthermore, even if Sykes was not the person who shot Brown, the evidence overwhelmingly showed that defendant gave the women money to influence their testimony at Sykes's trial.

Additionally, any possibility that the evidence, or summation comments, would unfairly prejudice defendant was eliminated by the court's limiting instruction, the court's instructions during jury selection regarding Gibson's murder, the prosecutor's statements to the jury that there was no evidence that defendant was involved in Gibson's murder, the court's instructions that the jury should not engage in speculation, and the court's instructions that the attorneys' arguments were not evidence and that the jurors were free to accept or reject the attorneys' arguments (A. 130, 882, 963). "Jurors are presumed to follow the legal instructions they are given." People v. Baker, 14 N.Y.3d 266, 274 (2010) (citations omitted).

Accordingly, defendant's claims should be rejected, and his habeas corpus petition should be denied.

## POINT II

## DEFENDANT'S CLAIM THAT HIS ENHANCED SENTENCE IS UNCONSTITUTIONAL IS PARTIALLY BARRED AND ENTIRELY MERITLESS.

As the second ground in support of his habeas corpus petition, defendant claims that the enhanced sentence that he had received as a persistent felony offender was unconstitutional because it violated the rule announced by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000). Defendant also claims that his sentence was improper because the court allegedly relied upon speculative facts from defendant's past. Defendant's sentencing claim as it relates to the court's alleged reliance on speculative facts is procedurally barred. Moreover, defendant's entire claim is meritless.

Defendant's claim regarding the sentencing court's alleged reliance upon speculative facts is procedurally barred because it was rejected by the Appellate Division on the basis of an adequate and independent state ground. A federal court, when reviewing a habeas corpus petition from a state prisoner, cannot consider the merits of a federal constitutional claim when the state court refused to review the merits of the claim on an adequate and independent state ground. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Wainwright v. Sykes, 433 U.S. 72, 81 (1977). In this case, the Appellate Division, Second Department, denied defendant's claim regarding the court's alleged reliance upon speculative facts on the basis of an adequate and independent state ground.

On his direct appeal, defendant raised in his main brief the same claim concerning the alleged reliance upon speculative facts that he raises here. See Defendant's Appellate Division Brief at 55-57. In their main brief to the Appellate Division, the People responded that the claim should not be considered because defendant had not complied with New York State's

contemporaneous objection rule, and that, in any event, the claim was meritless. See the People's Appellate Division Brief at 41-42. Under New York State's contemporaneous objection rule, in order to preserve a claim of error for appellate review, a party must voice a specific objection to the error "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2); see People v. Luperon, 85 N.Y.2d 71, 78(1995); People v. Lopez, 71 N.Y.2d 662, 665 (1988).

The Appellate Division, in its decision, found that the claim regarding the sentencing court's alleged reliance "upon an unproven allegation of misconduct" was unpreserved for appellate review. People v. Harris, 117 A.D.3d 847, 860 (2d Dep't 2014). Thus, the claim was denied on the procedural ground that defendant had failed to comply with New York State's contemporaneous objection rule. New York State's contemporaneous objection rule is an adequate and independent state ground for a decision. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Washington v. LeFevre, 637 F. Supp. 1175, 1176-77 (E.D.N.Y. 1986); see generally Wainwright v. Sykes, 433 U.S. at 85-90. Therefore, because the Appellate Division denied this claim on the basis of an adequate and independent state ground, the claim cannot be reviewed by a federal court in a habeas proceeding. See Velasquez v. Leonardo, 898 F.2d at 9; Washington v. LeFevre, 637 F. Supp. at 1176-77.

The fact that the Appellate Division additionally chose to rule on the merits of the claim, after deciding that the claim was unpreserved, does not eliminate the procedural bar. "[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a

state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

Defendant has not specifically asserted any cause or prejudice that would excuse him from the effect of his procedural default. See Murray v. Carrier, 477 U.S. 478, 485 (1986). To establish cause for a procedural default, a state prisoner ordinarily must show "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Id. at 488. Defendant has failed to make such a showing.

Moreover, defendant's claims are meritless. The Appellate Division properly rejected defendant's claim that his sentencing under New York's persistent felony offender statute violated his Sixth Amendment right to a jury trial, as that right has been defined in Apprendi, and applied in Ring v. Arizona, 536 U.S. 584 (2002), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). Under New York's persistent felony offender statute, a defendant is subject to an enhanced sentence based solely on the fact of the defendant's prior convictions. In Apprendi, Ring, Blakely, and Booker, the Supreme Court specifically excluded from the scope of its rulings sentencing statutes that authorize an enhancement of a defendant's sentence on the basis of a defendant's prior convictions. Therefore, the Appellate Division's decision, upholding defendant's persistent felony offender sentence, was neither contrary to, nor involved an unreasonable application of, Supreme Court precedent. See 28 U.S.C. § 2254(d)(1).

The Appellate Division reasonably and correctly concluded that defendant's sentencing pursuant to New York's persistent felony offender statute did not violate defendant's constitutional right to a jury trial. New York Penal Law § 70.10(1) defines a persistent felony offender as a defendant, other than a persistent violent felony offender, who stands convicted of a felony after having previously been convicted of two or more felonies. See N.Y. Penal Law § 70.10(1)(a).

New York Penal Law § 70.10(2) provides that, when a court has determined that a defendant is a persistent felony offender and when the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct" warrant extended incarceration and lifetime supervision, the court may impose the sentence of imprisonment authorized for a class A-I felony rather than the sentence of imprisonment that is otherwise authorized for the defendant.

New York Criminal Procedure Law § 400.20 sets forth the procedure for determining whether a defendant should be sentenced as a persistent felony offender. Criminal Procedure Law § 400.20(9) provides that if, at the conclusion of a persistent felony offender hearing, a court determines that a defendant is a persistent felony offender and the court is of the opinion that a persistent felony offender sentence is warranted, then the court may impose a persistent felony offender sentence.

The New York Court of Appeals has held that, under New York Penal Law § 70.10 and Criminal Procedure Law § 400.20, a defendant's "prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender." People v. Rosen, 96 N.Y.2d 329, 335, cert. denied, 534 U.S. 899 (2001), grant of writ of habeas corpus rev'd, 409 F.3d 523 (2d Cir. 2005), cert. denied, 547 U.S. 1022 (2006); accord People v. Quinones, 12 N.Y.3d 116, 129 (2009); People v. Rivera, 5 N.Y.3d 61, 66, cert. denied, 546 U.S. 984 (2005). "[N]o additional factfinding beyond the fact of two prior felony convictions is required under Penal Law § 70.10 or under Criminal Procedure Law § 400.20." Rivera, 5 N.Y.3d at 70 (emphasis in original). Consequently, a sentencing court may impose a persistent felony offender sentence on the basis of the defendant's prior convictions alone. Quinones, 12 N.Y.3d at 129; Rivera, 5 N.Y.3d at 70-71.

The New York Court of Appeals has stated that New York Penal Law § 70.10(2) -- which directs the sentencing court to consider the history and character of the defendant and the nature and circumstances of his criminal conduct before imposing a persistent felony offender sentence -- "merely makes explicit what sentencing courts have always done in deciding where, within a range, to impose a sentence." Rivera, 5 N.Y.3d at 69; accord Rosen, 96 N.Y.2d at 335; see also Quinones, 12 N.Y.3d at 129. The sentencing court, after adjudicating a defendant a persistent felony offender, "will consider holistically the defendant's entire circumstances and character, including traits touching upon the need for deterrence, retribution and rehabilitation unrelated to the crime of conviction." Rivera, 5 N.Y.3d at 70 n.8. Thus, New York Penal Law § 70.10(2) "is merely another way of saying that the court should exercise its discretion." Rivera, 5 N.Y.3d at 71.

In light of the construction of New York Penal Law § 70.10 and Criminal Procedure Law § 400.20 by the New York Court of Appeals, defendant's sentence as a persistent felony offender did not violate his right to a jury trial. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that a defendant's maximum sentence may be enhanced on the basis of a judge's finding that the defendant has one or more prior convictions. Id. at 239-47. Because New York's persistent felony offender statute renders a defendant subject to enhanced sentencing solely on the basis of the defendant's prior convictions, New York's persistent felony offender statute is constitutional.

The decision of the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), is not to the contrary. In Apprendi, the Supreme Court held that, as a general rule, facts that increase the penalty for a crime beyond the prescribed statutory maximum must be decided by a jury, not a judge. Id. at 490. On the basis of this principle, the Supreme Court struck down a New Jersey statute which permitted a sentencing judge to increase the penalty for a crime beyond the prescribed

statutory maximum on the basis of the sentencing judge's finding that the crime had been racially motivated. Id. at 468-69. But the Supreme Court in Apprendi expressly declined to overrule Almendarez-Torres and instead recognized an exception to the Apprendi rule for sentencing statutes that permit a judge to impose an enhanced sentence on the basis of the judge's finding that the defendant has one or more prior convictions. Id. at 487-90. The Supreme Court stated: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added).

The Supreme Court subsequently applied the principles announced in Apprendi to other sentencing provisions. See Ring v. Arizona, 536 U.S. 584 (2002) (applying Apprendi to Arizona's capital sentencing scheme); Blakely v. Washington, 542 U.S. 296 (2004) (applying Apprendi to the sentencing laws of the State of Washington); United States v. Booker, 543 U.S. 220 (2005) (applying Apprendi to the Federal Sentencing Guidelines); Cunningham v. California, 549 U.S. 270 (2007) (applying Apprendi to California's determinate sentencing law). But the Supreme Court has never overturned its ruling in Almendarez-Torres v. United States, 523 U.S. 224 (1998), that a defendant's maximum sentence may be enhanced on the basis of a judge's finding that the defendant has one or more prior convictions. See Rangel-Reyes v. United States, 547 U.S. 1200, 1207 (2006) (statement of Stevens, J., respecting denial of petitions for certiorari); Booker, 543 U.S. at 231; Blakely, 542 U.S. at 301; Ring, 536 U.S. at 597 n.4. Consequently, the decision in Almendarez-Torres is binding on this Court. See United States v. Snype, 441 F.3d 119, 148 (2d Cir.) ("Almendarez-Torres continues to bind this court in its application of Apprendi"), cert. denied, 549 U.S. 923 (2006).

To the extent that New York Penal Law § 70.10(2) permits the sentencing court to consider additional facts in deciding whether a persistent felony offender sentence is warranted in a given case, that requirement does not render New York's persistent felony offender statute unconstitutional. Apprendi, Ring, Blakely, and Booker do not diminish the authority of judges "to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment within the range prescribed by statute." Apprendi, 530 U.S. at 481 (emphasis in original); see Booker, 543 U.S. at 233 ("when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant").

Because a New York sentencing court is not required to make any findings of fact, other than the fact of two prior felony convictions, in order to impose a persistent felony offender sentence under New York law, New York's persistent felony offender statute is constitutional under Apprendi and its progeny.

Indeed, the Second Circuit Court of Appeals has already held that New York's persistent felony offender scheme was constitutional and consistent with both Apprendi and Ring. See Portalatin v. Graham, 624 F.3d 69, 93-94 (2d Cir. 2010) (en banc); see also Brown v. Greiner, 409 F.3d 523, 532-33 (2d Cir. 2005) (it was reasonable for New York state courts to conclude that sentence pursuant to New York's persistent felony offender statute was constitutional under Apprendi), cert. denied, 547 U.S. 1022 (2006); Brown v. Miller, 451 F.3d 54, 57-59 (2d Cir. 2006) (it was reasonable for New York state courts to conclude that sentence pursuant to New York's persistent felony offender statute was constitutional under Ring), cert. denied, 549 U.S. 1120 (2007).

Moreover, contrary to defendant's assertion, the court did not base its sentence on an unproven allegation in the form of a prior witness recantation. Rather, the court merely referred to the witness recantation in passing, noting that the allegation, which appeared in a transcript of prior plea proceeding, and which was not refuted by defendant or his counsel at the plea proceeding, bore a striking similarity to the criminal conduct in this case. The court made it very clear that it was basing its sentence on defendant's criminal history and the nature of his instant conviction. Indeed, just prior to pronouncing the sentence, the court stated, "I just can't get away from this [defendant's] record" (S. 64).[6] The fact that the court was troubled by defendant's criminal history is hardly surprising. Defendant, who was thirty-one years old at the time of sentence, had been convicted of two prior violent felony offenses, and when he was released from prison and on parole, he was arrested for drug manufacturing in South Carolina and was convicted of another felony offense. Defendant then committed the instant offenses when he was on probation. The court noted that "[t]he issue before me is criminal recidivism," and defendant's conviction for bribing three witnesses in a murder case "go[es] to the heart of the criminal justice system" (S. 67). Thus, the prior witness recantation did not factor in any way to defendant's sentence, and, notwithstanding his claim to the contrary, the court's decision to sentence defendant as a persistent felony offender was not an abuse of discretion as a matter of law.

Accordingly, for all of these reasons, defendant's claims concerning his sentence do not entitle him to habeas relief.

---

[6] Parenthetical numbers preceded by "S" refer to the transcript pages of the sentencing proceeding.

## POINT III

## DEFENDANT'S CLAIM THAT THE INDICTMENT WAS DEFECTIVE BECAUSE IT ALLEGEDLY LACKED THE REQUISITE SPECIFICITY IS PROCEDURALLY BARRED AND MERITLESS.

As the third ground in support of his habeas corpus petition, defendant claims that the indictment was defective because it lacked certain information, such as the names of the witnesses defendant was alleged to have bribed and tampered with, as well as the dates, times, and locations of the criminal conduct. Defendant's claim regarding the validity of the indictment is procedurally barred and meritless.

Defendant's claim regarding the indictment is procedurally barred because it was rejected by the Appellate Division on the basis of an adequate and independent state ground. A federal court, when reviewing a habeas corpus petition from a state prisoner, cannot consider the merits of a federal constitutional claim when the state court refused to review the merits of the claim on an adequate and independent state ground. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Wainwright v. Sykes, 433 U.S. 72, 81 (1977). In this case, the Appellate Division, Second Department, denied defendant's claim regarding the alleged inadequacy of the indictment on the basis of an adequate and independent state ground.

On his direct appeal, defendant raised in his pro se supplemental brief the same claim concerning the allegedly defective indictment that he raises here. See Defendant's Pro Se Supplemental Appellate Division Brief at 4-9. In their supplemental brief to the Appellate Division, the People responded that the claim should not be considered because defendant had not complied with New York State's contemporaneous objection rule, and that, in any event, the claim was waived and meritless. See the People's Supplemental Appellate Division Brief at 3-8.

28

The Appellate Division, in its decision, found that the claims that defendant had raised in his pro se supplemental brief (which included the claim challenging the adequacy of the indictment) were unpreserved for appellate review. People v. Harris, 117 A.D.3d 847, 860 (2d Dep't 2014). Thus, the claim was denied on the procedural ground that defendant had failed to comply with New York State's contemporaneous objection rule. New York State's contemporaneous objection rule is an adequate and independent state ground for a decision. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Washington v. LeFevre, 637 F. Supp. 1175, 1176-77 (E.D.N.Y. 1986); see generally Wainwright v. Sykes, 433 U.S. at 85-90. Therefore, because the Appellate Division denied this claim on the basis of an adequate and independent state ground, the claim cannot be reviewed by a federal court in a habeas proceeding. See Velasquez v. Leonardo, 898 F.2d at 9; Washington v. LeFevre, 637 F. Supp. at 1176-77.

The fact that the Appellate Division additionally chose to rule on the merits of the claim, after deciding that the claim was unpreserved, does not eliminate the procedural bar. "[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

Defendant has not specifically asserted any cause or prejudice that would excuse him from the effect of his procedural default. See Murray v. Carrier, 477 U.S. 478, 485 (1986). To establish cause for a procedural default, a state prisoner ordinarily must show "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Id. at 488. Defendant has failed to make such a showing.

Moreover, defendant's claim is meritless. As an initial matter, New York Criminal Procedure Law § 255.20(1) provides that a motion to dismiss a count in an indictment must be made within forty-five days of the defendant's arraignment on the indictment. Because defendant never filed a timely motion to dismiss the indictment, his present claim of error is waived. See People v. Iannone, 45 N.Y.2d 589, 600 (1978); People v. Sica, 163 A.D.2d 541, 543 (2d Dep't 1990).

In any event, the indictment was not defective because it complied with the requirements of New York Criminal Procedure Law § 200.50(7). See the Respondent's Supplemental Brief to the Appellate Division at 5-7. To the extent that the indictment lacked any required information, the infirmity was cured by the People's Bill of Particulars, which contained significant details about the charged crimes and was disclosed to the defense on May 6, 2003 -- well before trial. See the Respondent's Supplemental Brief to the Appellate Division at 7-8; People v. Jackson, 46 N.Y.2d 721, 723 (1978); People v. Perez, 93 A.D.3d 1032 (2d Dep't 2012) (any defect in the indictment was cured by the Bill of Particulars).

Accordingly, for all of these reasons, defendant's claim concerning the indictment does not entitle him to habeas relief.

## POINT IV

## DEFENDANT'S CLAIM THAT THE COURT IMPROPERLY AMENDED THE INDICTMENT IS PROCEDURALLY BARRED AND MERITLESS.

As the fourth ground in support of his habeas corpus petition, defendant claims that the court improperly amended the indictment when the court ascribed the names of the witnesses to the charged crimes during the final jury charge. Defendant's claim alleging the court's improper amendment of the indictment is procedurally barred and meritless.

Defendant's claim that the indictment was improperly amended is procedurally barred because it was rejected by the Appellate Division on the basis of an adequate and independent state ground. A federal court, when reviewing a habeas corpus petition from a state prisoner, cannot consider the merits of a federal constitutional claim when the state court refused to review the merits of the claim on an adequate and independent state ground. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Wainwright v. Sykes, 433 U.S. 72, 81 (1977). In this case, the Appellate Division, Second Department, denied defendant's claim regarding the court's alleged amendment of the indictment on the basis of an adequate and independent state ground.

On his direct appeal, defendant raised in his pro se supplemental brief the same claim concerning the alleged amendment of the indictment that he raises here. See Defendant's Pro Se Supplemental Appellate Division Brief at 10-13. In their supplemental brief to the Appellate Division, the People responded that the claim should not be considered because defendant had not complied with New York State's contemporaneous objection rule, and that, in any event, the claim was meritless. See the People's Supplemental Appellate Division Brief at 9-12.

31

The Appellate Division, in its decision, found that the claims that defendant had raised in his pro se supplemental brief (which included the claim challenging the alleged amendment of the indictment) were unpreserved for appellate review. People v. Harris, 117 A.D.3d 847, 860 (2d Dep't 2014). Thus, the claim was denied on the procedural ground that defendant had failed to comply with New York State's contemporaneous objection rule. New York State's contemporaneous objection rule is an adequate and independent state ground for a decision. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Washington v. LeFevre, 637 F. Supp. 1175, 1176-77 (E.D.N.Y. 1986); see generally Wainwright v. Sykes, 433 U.S. at 85-90. Therefore, because the Appellate Division denied this claim on the basis of an adequate and independent state ground, the claim cannot be reviewed by a federal court in a habeas proceeding. See Velasquez v. Leonardo, 898 F.2d at 9; Washington v. LeFevre, 637 F. Supp. at 1176-77.

The fact that the Appellate Division additionally chose to rule on the merits of the claim, after deciding that the claim was unpreserved, does not eliminate the procedural bar. "[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

Defendant has not specifically asserted any cause or prejudice that would excuse him from the effect of his procedural default. See Murray v. Carrier, 477 U.S. 478, 485 (1986). To establish cause for a procedural default, a state prisoner ordinarily must show "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Id. at 488. Defendant has failed to make such a showing.

Moreover, defendant's claim is meritless. Contrary to defendant's assertion, by referring to the witnesses' names in its final jury charge, the court was not amending the indictment, but was instead marshalling the evidence, as authorized by New York Criminal Procedure Law § 310.10(2). See the Respondent's Supplemental Brief to the Appellate Division at 10-12.

Accordingly, for all of these reasons, defendant's claim alleging the improper amendment of the indictment does not entitle him to habeas relief.

## THE STATE APPELLATE COURT'S DECISION DENYING DEFENDANT'S LEGAL INSUFFICIENCY AND WEIGHT OF THE EVIDENCE CLAIMS WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, FEDERAL LAW.

As the fifth ground in support of his habeas petition, defendant claims that he is entitled to habeas relief because his bribing a witness conviction was unsupported by legally sufficient evidence due to the fact that the People allegedly had failed to establish the existence of "an agreement or understanding to influence witnesses' testimonies." Defendant also claims that the verdict was against the weight of the evidence. Defendant's legal insufficiency and weight claims are meritless and do not entitle him to habeas relief.

Federal habeas review of legal sufficiency claims is highly deferential. A defendant advancing a claim alleging insufficiency of the evidence "bears a very heavy burden." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 811 (2d Cir. 2000); Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (same). In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court emphasized that the reviewing court must not ask itself "whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, . . . [but] whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original; internal quotation marks and citations omitted). In other words, to prevail on a sufficiency of the evidence claim in a habeas proceeding, a defendant must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324 (emphasis added); see also Wright v. West, 505 U.S. 277, 290 (1992).

"[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury," and thus, a habeas court must "defer to the jury's assessments of both of these issues." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996); see Jackson, 443 U.S. at 319. Moreover, not only must the reviewing court consider all of the evidence in the light most favorable to the prosecution, but also, the reviewing court must consider all of the possible inferences that may be drawn from the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 319; Wright, 505 U.S. at 296-97 ("a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting Jackson, 443 U.S. at 326); Fama, 235 F.3d at 811; United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998) (where there is a choice between competing inferences, the reviewing court must "credit[] every inference that the jury might have drawn in favor of the government").

In addition to the deferential standard of review governing legal sufficiency claims generally, the State in this case is entitled to yet another layer of deference, because the Appellate Division adjudicated defendant's legal insufficiency and weight claims on the merits. See People v. Harris, 117 A.D.3d 847, 853 (2d Dep't 2014); see generally Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001).

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), where the relevant state court adjudicated the habeas petitioner's claim on the merits, the petition may be granted only if the state court's adjudication of the prisoner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1); see Johnson v. Mitchell, 585 F.3d 923, 931-33 (6th Cir. 2009) (deferential

standard of § 2254[d][1] applies to claims of legal insufficiency).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained the standard of

review under 28 U.S.C. § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrived at a conclusion opposite to that
> reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's
> decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

Id. at 412-13; see Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000) (under AEDPA, state

court's ruling must be not only incorrect but also unreasonable), cert. denied, 531 U.S. 1116

(2001).

In this case, the Appellate Division's decision rejecting the defendant's legal

insufficiency and weight claims was neither contrary to, nor an unreasonable application of,

Supreme Court precedent. The "contrary to" clause of 28 U.S.C. § 2254(d)(1) is inapplicable to

this case because the Supreme Court has never decided a case involving facts that are materially

indistinguishable from the facts of this case. Williams, 529 U.S. at 412-13. And for the reasons

discussed below, the Appellate Division's conclusion that the evidence was legally sufficient to

sustain the defendant's conviction of bribing a witness was not an unreasonable application of

the Jackson v. Virginia standard.

In New York, a person is guilty of bribing a witness when he "confers or offers or agrees

to confer, any benefit upon a witness or a person about to be called as a witness in any action or

proceeding upon an agreement or understanding that (a) the testimony of such witness will

thereby be influenced . . ." N.Y. Penal Law § 215.00. In light of the evidence adduced at trial, the jury reasonably concluded that defendant committed three counts of bribing a witness.

Contrary to defendant's assertion, the evidence overwhelmingly established that defendant had conferred benefits upon Shaquanna Edmonds, Naia Hardison, and Latisha Smith, with an understanding that, in exchange for the benefits, they would alter their testimony in the upcoming murder trial of defendant's half-brother, Wesley Sykes. <u>See</u> the Respondent's Supplemental Brief to the Appellate Division at 14-18.

Accordingly, because the Appellate Division's decision rejecting defendant's legal insufficiency and weight claims was not an unreasonable application of the rule announced by the Supreme Court in <u>Jackson</u>, the claims do not entitle defendant to <u>habeas</u> relief.

## DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS UNEXHAUSTED, BUT SHOULD BE DEEMED PROCEDURALLY BARRED. IN ANY EVENT, DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COUNSEL.

As the sixth ground in support of his habeas petition, defendant claims that he is entitled to habeas relief because his trial counsel provided ineffective assistance because counsel failed to object to: certain hearsay testimony from the bribed witnesses that other people had told them that defendant had wanted to speak with them, and that defendant was dangerous; some of the prosecutor's summation comments that allegedly suggested that defendant was part of a conspiracy to eliminate witnesses in the Wesley Sykes case; and to the court's alleged failure to swear in the prospective jurors before voir dire. Defendant's ineffective assistance of counsel claim is unexhausted, but procedurally barred because defendant no longer has a state forum in which to raise the claim. Moreover, defendant has failed to establish that he was deprived the effective assistance of counsel.

Defendant has never claimed in state court that he was deprived of the effective assistance of counsel for the reasons he now states. Defendant was required to raise the claim on his direct appeal because the claim relies upon facts which appear in the trial record (it can be discerned from the record that counsel did not object when defendant now claims counsel should have objected). Defendant failed to do this. Therefore, the claim should be deemed exhausted, but procedurally barred, because defendant no longer has a state forum in which to raise the claim. See Bossert v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994) (if a state prisoner has not exhausted his state remedies with respect to a claim, but no longer has a state forum in which to raise the claim, the claim is procedurally barred).

Moreover, defendant's claim is meritless. In order to establish a deprivation of effective assistance of counsel, a criminal defendant must show both that "counsel's performance fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Defendant has failed to satisfy either prong of the Strickland standard. Indeed, the evidence, the law, and the circumstances of this case, viewed together as of the time of representation, establish that defendant received competent representation at his trial that did not fall below any objective standard of reasonableness, and did not result in prejudice to the defense.

Defendant's attorney, Stacey Richman, Esq., provided defendant with meaningful representation. Faced with overwhelming evidence of defendant's guilt from the testimony of Shaquanna Edmonds, Latisha Smith, Naia Hardison (the three women that defendant had paid to disavow their identifications of defendant's half-brother as the shooter in a murder case), counsel adopted a shrewd defense strategy of conceding that defendant had facilitated the recantations (albeit without paying the women), but had done so because their identifications of defendant's half-brother as the shooter were false. Counsel advanced this theory by vigorously attacking the credibility of the women, arguing persuasively that they had been pressured by the police, and swayed by the money that the District Attorney's Office had given them, into implicating defendant in the bribery. In fact, counsel won for defendant acquittals on the witness tampering counts, successfully persuading the jury that the women did not fear defendant.

Defendant first claims that his counsel was ineffective because counsel did not object to the hearsay testimony of Edmonds and Hardison about third persons approaching the women, telling them that defendant was looking for them, and warning them that defendant was dangerous. However, this testimony was properly admitted for the non-hearsay purpose of

explaining the circumstances under which defendant first made contact with the women. Moreover, defendant cannot establish that he was prejudiced by a lack of specific objection to this testimony, because it showed that the women could have reasonably feared defendant, and by acquitting defendant of the witness tampering counts, the jury necessarily concluded that the women did not fear defendant.

Defendant next claims that his counsel should have made specific objections to several of the prosecutor's summation comments that allegedly suggested that defendant had been involved in Gibson's murder and/or was part of a plan to eliminate witnesses in the Sykes case. Counsel's decision to only make general objections to these comments, and to refrain from making a more specific mistrial motion based upon the comments, was proper and did not result in prejudice, because the prosecutor never suggested that defendant had been involved in either Gibson's murder or in a witness elimination plan. See Supra at 15-18. On the contrary, the prosecutor twice stated in his summation that there was no evidence that defendant had been involved in Gibson's murder (A. 926, 950).

Finally, defendant claims that his counsel improperly failed to object when the court allegedly failed to swear in the prospective jurors before voir dire. However, there was no reason for counsel to object, because, contrary to defendant's assertion, the court administered the appropriate oath to the panel of prospective jurors before the commencement of voir dire (V. 91). See N.Y. Crim. Proc. Law § 270.15(1)(a).

Accordingly, defendant's procedurally barred ineffective assistance of counsel claim should be rejected and his habeas corpus petition should be denied.

## POINT VII

### DEFENDANT'S ACTUAL INNOCENCE CLAIM IS UNEXHAUSTED. IN ANY EVENT, THE CLAIM IS MERITLESS.

As the seventh and final ground in support of his <u>habeas corpus</u> petition, defendant claims that he is actually innocent. In support of his claim, defendant cites to his newly-obtained affidavits from Aaron Young and Perry Butler, which according to defendant, undermine the testimony of Shaquanna Edmonds, Latisha Smith, Naia Hardison that certain people, including Young, had approached them, told them that defendant was looking for them, and warned them that defendant was dangerous. Defendant's claim is unexhausted because defendant has failed to raise this claim in state court, and he may still do so. In any event, the claim is completely meritless.[7]

In order to have exhausted a federal constitutional claim, a petitioner must have fairly presented the legal and factual premises of the claim to the state courts. <u>Daye v. Attorney General of the State of New York</u>, 696 F.2d 186, 191-92 (2d Cir. 1982), <u>cert</u>. <u>denied</u>, 464 U.S. 1048 (1984); <u>Sanford v. Senkowski</u>, 791 F. Supp. 66, 68 (E.D.N.Y. 1992). Here, defendant never raised in state court his claim alleging actual innocence., and he may still raise this claim in a New York Criminal Procedure Law § 440.10 motion. <u>See People v. Hamilton</u>, 115 A.D.3d 12, 25-26 (2d Dep't 2014). Thus, federal <u>habeas corpus</u> review of the claim is unavailable. <u>See</u> 28 U.S.C. 2254(b) and (c); <u>Rose v. Lundy</u>, 455 U.S. 509, 520 (1982). Indeed, the unexhausted claim converts defendant's petition into a "mixed petition," which in turn warrants the dismissal

---

[7] Defendant also claims that his trial counsel was ineffective for failing to call as witnesses Young and Butler. However, this claim is also unexhausted and must first be presented to a state court before it can be considered in the context of a <u>habeas corpus</u> petition.

of the entire petition.  See id. at 522; Rodriguez v. Hoke, 928 F.2d 534, 537 (2d Cir. 1991); Garcia v. Scully, 907 F. Supp. 700, 705-07 (S.D.N.Y. 1995).

In any event, defendant's claim is meritless.  Defendant has not attached to his habeas petition the affidavits from Young and Butler which allegedly establish his actual innocence, but assuming that they assert what defendant claims they do, the affidavits do not show that defendant is actually innocent, because they do not constitute "new reliable evidence" or "demonstrate that [it is] more likely than not, in light of the new evidence, no reasonable juror would find the defendant guilty beyond a reasonable doubt." House v. Bell, 547 U.S.518, 537-38 (2006).  Indeed, even assuming that Young and Butler are credible, their affidavits merely suggest at most that only a small, insignificant part of the testimony of Edmonds, Hardison, and Smith might have been inaccurate (the part about how they first became aware that defendant was looking for them), and they do not seriously undermine the important part of their testimony (that defendant took them to the office of Sykes's lawyer, told them to make statements in which they recanted their identifications of Sykes and identified another man as the shooter, and then paid them each $500).  Thus, the affidavits do not meet defendant's burden of establishing his actual innocence.  Sawyer v. Whitley, 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of the [witness's] account").

Accordingly, defendant's actual innocence claim should be rejected and his habeas corpus petition should be denied.

<u>CONCLUSION</u>

<u>FOR THE AFOREMENTIONED REASONS, DEFENDANT'S PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED</u>.

Dated:     Brooklyn, New York
           April 6, 2017

Respectfully submitted,

ERIC GONZALEZ
Acting District Attorney
Kings County

LEONARD JOBLOVE
MORGAN J. DENNEHY
Assistant District Attorneys
        of Counsel

<u>Certificate of Service</u>

I hereby certify that on April 6, 2017, the foregoing document was filed with the Clerk of the Court and served upon the following party in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service:

Dupree Harris, 06-A-4847
Shawangunk Correctional Facility
PO Box 700
Wallkill, New York 12589

Morgan J. Dennehy
Assistant District Attorney
Office of the Kings County District Attorney

350 Jay Street
Brooklyn, New York 11201
(718) 250-2515