UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
**DUPREE HARRIS**,                                              :

                Petitioner,        :

                           :  **MEMORANDUM**

          - against -                  :  **DECISION AND ORDER**

**J. LAMANNA**,                                                :  17-CV-00080 (AMD)

                Respondent.        :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* petitioner, currently incarcerated at Shawangunk Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On August 5, 2004, the

petitioner was convicted after a jury trial of three counts of Bribing a Witness (N.Y. Penal Law §

215.00), and acquitted of three counts of Tampering with a Witness in the Third Degree (N.Y.

Penal Law § 215.11[2]).  On March 17, 2005, the court sentenced the petitioner as a persistent

felony offender to concurrent indeterminate prison terms of fifteen years to life for each count.

The petitioner asserts seven claims for habeas relief.  (ECF No. 1.)  For the reasons that follow,

the petition for a writ of habeas corpus is denied.

## FACTUAL BACKGROUND[1]

### I.     Overview

On September 4, 2001, Wesley Sykes, the petitioner's half-brother, shot and killed

Dennis Brown in the Bedford-Stuyvesant neighborhood of Brooklyn in front of multiple

witnesses.  As Sykes' trial neared, the petitioner cultivated relationships with three of those

---

[1]  Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict.
*Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

witnesses—all young women—and eventually paid them each $500 to make a sworn statement to Sykes' lawyer that Corey McCollough, not Sykes, shot Brown.

Bobby Gibson, another eyewitness to the murder, was murdered days before he was to testify in the Sykes trial. The next day, the three girls told the police and assistant district attorney that the petitioner had paid them to pin the murder on McCullough. The district attorneys relocated them for their safety, and they testified at Sykes' trial and identified Sykes as the murderer.

A jury convicted Sykes of Brown's murder and he was sentenced to a prison term of twenty-five years to life. Sykes' judgment of conviction was affirmed on appeal. *People v. Sykes*, 772 N.Y.S.2d 586 (2d Dep't 2004).

## II. The Arrest and Indictment

The petitioner disappeared after the Gibson murder. Detectives finally located him in Amherst, Virginia, on December 19, 2002; he was using the name Carlos Watts. (Tr. at 116:15-16, 120:2-15.) The grand jury charged the petitioner with three counts each of Bribing a Witness (N.Y. Penal Law § 215.00) and Tampering with a Witness in the Third Degree (N.Y. Penal Law § 215.11[2]).[2] Travis Ragsdale was convicted of murdering Bobby Gibson on June 29, 2014.

## III. The Trial

### a. *Pre-Trial Evidentiary Rulings*

A month after Ragsdale's conviction, the petitioner went to trial before Judge Carolyn Demarest in July of 2004.

---

[2] On May 6, 2013, the prosecution served the defense with a Bill of Particulars that included the names of witnesses the petitioner was accused of bribing and manipulating, and the case in which the witnesses were expected to testify. (ECF No. 6-2 at 157.)

Before *voir dire*, the petitioner's lawyer asked the court to preclude any reference to the Gibson murder, arguing that it was "wholly immaterial, separate and entirely unrelated" to the petitioner's trial and that any reference to it would be prejudicial. (ECF No. 6-3 at 24:5-25:4.) The prosecutor countered that evidence of the murder was relevant because it explained why the petitioner fled to Virginia during his brother's prosecution, why the witnesses disavowed their audiotaped recantations and why the District Attorney's office expended significant resources to relocate the witnesses. (*Id.* at 28:14-31:3.) The court ruled that the Gibson murder was admissible to explain the relocation and was relevant to the witnesses' states of mind. (*Id.* at 33:2-8.) Judge Demarest also said that she would instruct the jury that the petitioner was not accused of committing or being involved with murdering Bobby Gibson. (*Id.* at 44:23-45:15.) Accordingly, the court informed the panel of prospective jurors that the allegations were that the petitioner tampered with and bribed three witnesses scheduled to testify against his brother in a murder trial, and that the petitioner was not "in any way accused of being involved" in the "murder of a person named Robert Gibson."[3] (*Id.* at 93:23-95:18.)

After the jury had been selected, but before opening statements, the petitioner's lawyer asked the court to reconsider its ruling on the Gibson murder, or in the alternative, to permit the defense to introduce Ragsdale's videotaped confession to the murder. (Tr. at 2:14-3:21.) The court adhered to its original ruling that the evidence of Bobby Gibson's murder was relevant and admissible. (*Id.* at 5:19-6:11.) The court warned the prosecutor "not to belabor the issue of the homicide of Bobby Gibson" or to "make any insinuations or inferences that [the petitioner] was in fact connected to the murder of Bobby Gibson." (*Id.* at 6:12-20.) "The only thing [the

---

[3] The court also instructed the panel to ignore press reports connecting the petitioner to the Gibson murder and to base the verdict "on the evidence in this case, on the charges in this case." (*Id.* at 94:10-18.)

prosecution] may use that information for in [its] opening is by way of explanations as to why the witnesses claimed they changed their mind, and that's the only relevance, is that their state of mind was altered by certain information made to them and they made inferences." (*Id.* at 8:6-11.) The court reiterated that it would give a limiting instruction at the appropriate time. (*Id.* at 9:17-21.)

    b.  *Opening Statements*

    During opening statements, the prosecutor explained why the murder of Bobby Gibson was relevant:

> [The petitioner] is accused of bribery and tampering of these witnesses . . . Another person, you may hear the name Travis Ragsdale shot and killed Bobby Gibson on the street in that area. This is a trial of bribery and tampering. That's all that [the petitioner is] charged with. It's got to be very clear. But understand what happened next. These women went into shock. Not shock, but confusion.

(*Id.* at 42:1-11.)

    For her part, the petitioner's attorney characterized the case as a "witch hunt" and argued that there were approximately ten witnesses to the Sykes murder, including the three women alleged to have been bribed by the petitioner. (*Id.* at 47:17-18, 48:3-7.)

    c.  *The Prosecution's Case*

    The prosecution called eleven witnesses, including three eyewitnesses—Shaquanna Edmonds, Latisha Smith and Naia Hardison—and Michael Warren, the attorney who represented the petitioner's brother in the murder trial. The testimony established the following facts:

    On September 4, 2001, Wesley Sykes, the petitioner's half-brother, shot and killed Dennis Brown in a Bedford-Stuyvesant park. (*Id.* at 192:23-193:2.) Witnesses to the murder included a teenage boy—Bobby Gibson—and three teenage girls—Shaquanna Edmonds, Latisha Smith and Naia Hardison. (*Id.* at 104:10-14.) On October 22, 2001, Gibson, Edmonds and

4

Hardison separately identified Sykes in a lineup as the shooter.[4]  (*Id.* at 70:17-74:18, 110:10-113:14.)  Three days later, on October 25, Smith, Hardison and Edmonds recorded sworn statements with the District Attorney's office naming Sykes as the murderer.  (*Id.* at 171:5-178:15, 196:16-24, 321:4-12, 447:1-8.)

As Sykes' trial neared, the petitioner cultivated relationships with Edmonds, Smith and Hardison; he bought them meals, gave them money and had a sexual relationship with at least one of them.  (*Id.* at 203:16-204:22, 279:4-6, 336:1-340:3, 453:12-454:12.)  On one occasion during their relationship, Smith heard the petitioner tell Edmonds that he wanted to speak to Corey Brown and Bobby Gibson.[5]  (*Id.* at 337:10-338:8.)

Shortly before Sykes' trial, the petitioner took each young woman, separately, to the offices of Sykes' attorney, Michael Warren, and told them to tell Warren that Corey McCollough, not Sykes, shot Brown.  (*Id.* at 205:11-214:5, 331:2-335:25, 455:3-460:21.)  Each gave Mr. Warren a sworn, audiotaped statement identifying McCullough as the murderer; the petitioner sat with each witness as she made the statement.  (*Id.*; *see also* Tr. at 582-596.)  After they left the office, the petitioner gave each $500.  (*Id.* at 205:11-214:5, 331:2-335:25, 455:3-460:21.)

On June 29, 2002, Bobby Gibson was murdered, days before he was scheduled to testify against Sykes.  (*Id.* at 75:4-7.)  Detectives checked in with Edmonds, Smith and Hardison, all of whom seemed "very nervous, edgy."  (*Id.* at 76:9-22.)  The next day, the girls told the police and

---

[4]  Smith did not view the lineup.  (*Id.* at 70:1-9.)

[5]  Outside the presence of the jury, the prosecutor asked for permission to establish that Smith heard the petitioner ask to speak with Bobby Gibson.  (*Id.* at 302:5-8.)  The court ruled that the petitioner's lawyer "opened the door" in her opening statement when she argued that it made no sense for the petitioner to bribe three witnesses, because there were so many other witnesses to the murder.  (*Id.* at 305:14-22.)  The court cautioned the prosecutor to avoid "any suggestion that [the petitioner] was in anyway culpable regarding the death of Mr. Gibson.  That definitely is excluded."  (*Id.* at 305:22-24.)

the assistant district attorney that the petitioner had paid them to recant their allegations against Sykes. (*Id.* at 97:10-99, 401:4-402:25.) The prosecution arranged for the witnesses to be relocated for their safety. (*Id.*).

d. *The Defense's Case*

After the prosecution rested, defense counsel renewed the request to play the videotape of Ragsdale confessing to murdering Gibson; she argued that evidence of the Gibson killing had cast a "shadow" on the petitioner and that Ragsdale's confession to shooting Gibson would minimize any prejudice. (*Id.* at 700:19-21, 705:10-18, 708:16-709:1.) The prosecutor responded that if the court admitted the tape, the prosecution should be permitted in summation to rebut Ragsdale's statements by asking the jury to consider "who is it that gave [Ragsdale] the gun," where the petitioner was when Gibson was killed and who "invited" Gibson to the party at which he was shot. (*Id.* at 709:14-710:15.)

The court ruled that the petitioner could play the taped statement, but cautioned counsel that admitting the confession would "open the door" to a challenge to Ragsdale's "credibility." (*Id.* at 712:24-713:4.) The court reminded the parties that it would instruct the jury that the petitioner "ha[d] not been charged with causing the death" of Gibson, and that the evidence of the Gibson murder was admitted solely to show the witnesses' states of mind and explain the circumstances of their relocation. (*Id.* at 718:20-719:5.)

Defense counsel opted to introduce the tape of Ragsdale's confession. (*Id.* at 725.)

e. *Summations*

Defense counsel's primary argument in summation was that the petitioner could not be guilty because the witnesses testified that the petitioner "did not intimidate [them]," (*id.* at 768:23-24), and that he was a "very nice gentleman . . . a nice guy" (*id.* at 769:1-2). At the same

time, counsel argued that the witnesses were unreliable because of inconsistencies in their testimony, and because they were motivated by promises of relocation benefits from the District Attorney's office.  (*Id.* at 783-85, 789, 795.)  According to counsel, the evidence of the Gibson murder was nothing more than the prosecution's "hysteria" to get the petitioner, and that Ragsdale's confession was proof that the petitioner was not involved in that murder.  (*Id.* at 768:5-19, 779:6-25.)

The prosecutor also discussed the Gibson murder.  He agreed that there was no evidence that the petitioner shot Gibson, but he did challenge Ragsdale's credibility, dismissing Ragsdale's "stupid explanation for how [Gibson] got killed."  (*Id.* at 805:16-25.)  He pointed out, over an objection, that Ragsdale did not know how he got the gun, and that his claims that he was drunk and fired at "a great distance . . . to scare somebody" were not believable, since he shot Gibson through the heart.  (*Id.* at 806:5-807:4.)  The prosecutor commented that the evidence showed that "[the petitioner] reached out to three witnesses and a fourth got killed that weekend," but also said that the prosecution did not "have evidence that [the petitioner was] behind the killing of Bobby Gibson."  (*Id.* at 807:7-20.)

During a break in the prosecutor's summation, the defense attorney moved for a mistrial, claiming that even if she had "opened the door" to some argument, "the People ha[d] gone far afield blatantly, and violated the Court's [ruling]" by insinuating that the petitioner played a role in Gibson's murder.  (*Id. at* 823:1-11.)  The court denied the motion.  (*Id.*)

      f.  *Jury Charge and Verdict*

As part of the final charge, Judge Demarest explained the limited purpose for which the evidence of Bobby Gibson's murder was admitted:

> I remind you again as I have instructed you repeatedly from the very
> beginning of this trial that this defendant, Dupree Harris, has not been

> charged with causing the death of the witness Bobby Gibson. The people
> have introduced evidence regarding Mr. Gibson's death for the purpose of
> explaining the state of mind of the three of the complainants, that is Latisha
> Smith, Naia Hardison, and Shaquanna Edmonds, and to provide the
> background for their participation in the witness protection program of the
> District Attorney's office.

(*Id.* at 855:14-24.)

The court also instructed the jury to evaluate the "statements of Travis Ragsdale who has

been convicted of the murder of Bobby Gibson . . . as you will evaluate the credibility of all

witnesses . . . ." (*Id.* at 856:1-5.)

The jury acquitted the petitioner of the tampering counts, but convicted him of the

bribery counts. (*Id.* at 921:15-923:11.)

## IV.   The Sentencing

On February 24, 2005, the court held a hearing to determine whether the petitioner was

eligible to be sentenced as a discretionary persistent felony offender pursuant to Section 70.10 of

the New York Penal Law.[6] (ECF No. 6-18 at 19:17-25:6.) The petitioner had three prior felony

convictions—a 1991 conviction for criminal possession of a weapon in the third degree (*id.* at

20:1-7), and two 1993 convictions for attempted third-degree weapon possession (*id.* at 21:8-

16).[7] Judge Demarest rejected the petitioner's argument that Penal Law 70.10 was

unconstitutional (*id.* at 25:13-28:19, 30:1-35:7), and concluded that "there is no question at this

---

[6] A persistent felony offender is a person "who stands convicted of a felony after having previously been convicted of two or more felonies," as defined in the statute. N.Y. Penal Law § 70.10(1)(a). Section 70.10(2) permits a court to sentence a defendant as a persistent felony offender where the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest . . . ." Persistent felony offenders receive enhanced sentences equivalent to those imposed for class A-I felonies; the minimum is from fifteen years to life and the maximum is twenty-five years to life. N.Y. Penal Law § 70.00(3)(a)(i).

[7] In one of these cases, the petitioner was charged with murder in the second degree, but the witness went to the petitioner's lawyer's office and recanted his grand jury testimony. For that reason, the prosecutor offered the petitioner a reduced plea. (*Id.* at 23:3-24:14.)

point that the defendant is a persistent felony offender as defined under Penal Law Section 70.10" (*id.* at 24:23-25:6).

The sentencing took place on March 17, 2005. Judge Demarest observed that despite the petitioner's "enormous potential," his record established a pattern of behavior that merited treating him as a persistent felony offender: "I am basing this on a total of eight crimes that have been established by conviction . . . there is no way I could look the other way and give this man quote 'another chance' when there has been this pattern established." (*Id.* at 66-68.) Judge Demarest sentenced the petitioner to concurrent prison terms of fifteen years to life for each count, the minimum term for a persistent felon. (*Id.* at 68:13-23.)

## PROCEDURAL HISTORY

### I.   Direct Appeal

The petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department, arguing that evidence of the Gibson murder "allow[ed] the prosecutor to suggest that [the petitioner] was a violent accomplice to an uncharged murder, despite the lack of any evidence connecting him to the crime." (ECF No. 6-2 at 37.) The petitioner also challenged his sentence as a persistent felony offender and claimed that the judge based her sentence on an impermissible consideration—that a witness in connection with one of the petitioner's prior crimes recanted his identification of the petitioner.[8] (*Id.* at 50-64.)

The petitioner filed a *pro se* supplemental brief in which he asserted the following additional claims: the indictment was deficient because it lacked specific dates, times, places of occurrence and the names of each bribed witness; the court impermissibly amended the

---

[8]  At the hearing on the petitioner's persistent felony offender status, Judge Demarest noted as an aside that a witness in connection with one of his convictions had recanted his identification of the petitioner as a murderer. (ECF No. 6-18 at 23:10-24:14.)

indictment when it referred to the specific names of the bribed witnesses in the final jury instruction; and the evidence was legally insufficient because the prosecution failed to establish the existence of an agreement or understanding to influence the witnesses' testimony. (*Id.* at 127-147.)

On May 14, 2014, the Appellate Division affirmed the petitioner's judgment with one judge dissenting. *People v. Harris*, 117 A.D.3d 847 (2d Dep't 2014). The majority held that the evidence of the petitioner's guilt was legally sufficient, and that the verdict was not against the weight of the evidence. *Id.* at 853. The majority rejected the petitioner's claim about the Gibson murder. First, evidence of Gibson's killing was relevant to explain why the witnesses recanted and then disavowed those recantations, and why they were put in a witness protection program. *Id.* at 854-857. Second, the prosecution emphasized that there was no evidence the petitioner was involved in Gibson's murder, and while the prosecutor "question[ed] the credibility of portions of the Ragsdale confession on summation, he did not argue to the jury that the [petitioner] was involved in Gibson's death." *Id.* Finally, the trial court instructed the jury "'repeatedly from the very beginning of this trial' [that] the defendant had 'not been charged with causing the death of the witness Bobby Gibson.'" *Id.* at 853 (citation omitted)

The majority also rejected the petitioner's claims about the prosecutor's summation as "largely unpreserved for appellate review," and in any event, meritless. *Id.* at 859 ("[T]he challenged remarks were fair comment on the evidence, constituted a fair response to defense counsel's summation, or otherwise do not warrant reversal.") (citations omitted). As for the sentence, the court held that the sentencing procedure was constitutional, that the court "providently exercised its discretion in sentencing the defendant as a persistent felony offender" given "the nature of the defendant's criminal conduct, his history, and his character," and that the

court did not base its sentencing decision on an unproven allegation.[9]  *Id.* at 860 (citations omitted).  Finally, the majority rejected the petitioner's claims about the indictment as unpreserved for appellate review and meritless.  *Id.* at 860.

The Honorable Robert J. Miller dissented on the subject of the admission of the evidence of the Gibson murder because it "permitted [the petitioner] to be cast as a man who had been involved in a heinous witness-elimination murder," which "so completely shifted [the focus of the trial] to the uncharged murder that the case unraveled into a trial within a trial . . . ."  *Id.*  On July 8, 2014, Judge Miller granted the petitioner's application for leave to appeal to the New York Court of Appeals.  *People v. Harris*, 23 N.Y.3d 1045 (2014) (Miller, J.).

## II.    Court of Appeals

On appeal to the New York Court of Appeals, the petitioner renewed his claims about the admission of the Bobby Gibson murder evidence, and about the prosecutor's summation comments, which the petitioner claimed "urged the jurors to conclude that [the petitioner] was directly implicated in Gibson's witness-elimination murder."  (ECF No. 6-2 at 240, 218-246.)

The Court of Appeals affirmed the Appellate Division's decision, ruling that the evidence about Bobby Gibson was relevant to the three witnesses' states of mind; it explained "why they abandoned their recantations," and "why the girls were placed in protective custody prior to trial."  *People v. Harris*, 26 N.Y.3d 1, 5 (2015).  The Court held that the possibility "that the jury might link [the petitioner] to the Gibson murder" was mitigated by the court's limiting instruction, its final charge and the prosecutor's opening statement and summation, all of which made clear that "the [petitioner] had not been charged with causing the death of Gibson" and that "there was no evidence that [he] was involved."  *Id.*

---

[9]  The court also found this claim was unpreserved for appellate review.  *Id.* (citations omitted).

### III.    Habeas Petition

In seeking habeas relief, the petitioner renews his claims about the trial court's evidentiary ruling on the admissibility of the evidence of Bobby Gibson's murder, and his sentence as a discretionary persistent felony offender.  He also claims that the indictment was insufficiently specific and that the trial judge amended it.  He challenges the sufficiency of the evidence.  Finally, he argues that his trial lawyer was ineffective, and that he is actually innocent; he concedes that he did not make these claims in state court.  (ECF No. 1 at 34.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits.  28 U.S.C. § 2254(d); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).  The federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.*; *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It does not include principles of constitutional law grounded solely in the holdings of courts of appeals or refinements of general principles of Supreme Court precedent into specific rules.  *See Jackson v. Conway*, 763 F.3d 115, 134 (2d Cir. 2014) ("[W]e must scrupulously avoid using our decisions (or those of other circuits) to 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific

legal rule that the Court has not announced.") (quoting *Marshall v. Rodgers*, 596 U.S. 58, 64 (2013) and citing *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam)).

A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412-13. In assessing whether a state court decision involves an unreasonable application of clearly established federal law, the question is "whether the state court's application . . . was objectively unreasonable," rather than merely incorrect. *Id.* at 409-10. A state court prisoner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies, and gives the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (citations omitted).

      a. *Fair Trial Claims*

The petitioner contends that the trial court's admission of the evidence of the Gibson murder, and the prosecution's statements in summation, violated his due process right to a fair trial. (ECF No. 1 at 8-14; ECF No. 9 at 50-59.)

i.   Evidence of an Uncharged Crime.

A state court's evidentiary rulings typically do not present constitutional issues worthy of habeas review.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . .") (citations omitted); *Crane v. Kentucky*, 476 U.S. 683, 689 (1986) ("We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.").  For this reason, a habeas petitioner must do more than show that the admission of evidence violated a New York evidentiary rule.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Rather, a habeas petitioner must demonstrate that the alleged error violated his right to due process under the Fourteenth Amendment.  *Id.* ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted).

The Due Process Clause "guarantees the fundamental elements of fairness in a criminal trial."  *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (citations omitted).  Accordingly, a habeas petitioner cannot prevail on a claim that a state evidentiary ruling was wrong unless he shows that the error "rendered his trial fundamentally unfair."  *Chambers v. Mississippi*, 410 U.S. 284, 289-90 (1973); *see also Dowling v. United States*, 493 U.S. 342, 352 (1990) ("The question, however, is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice.'") (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).

Bobby Gibson, a witness to the murder with which the petitioner's brother Sykes was charged, was murdered shortly before he was supposed to testify; three other eyewitnesses—Smith, Hardison and Edmond—told the police that the petitioner paid them to change their statements. The trial judge ruled that evidence of Gibson's murder was relevant to explain the eyewitnesses' states of mind, and to explain why the prosecution relocated the three girls. The court permitted defense counsel to introduce the videotaped confession of Travis Ragsdale, who shot Gibson, and the court issued limiting instructions at the beginning of jury selection and in its final charge, instructions that the jury is presumed to have followed. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (citations omitted). Moreover, the prosecutor was explicit that the petitioner was not charged with the murder.

New York courts rejected the petitioner's claim that evidence about Bobby Gibson's murder violated his rights. The Appellate Division and the Court of Appeals held that the trial court's decision to permit the evidence was an appropriate exercise of discretion that did not deprive the petitioner of a fair trial. *Harris,* 26 N.Y.3d at 5; *Harris*, 117 A.D.3d at 853-60. That decision was not an unreasonable application of *Chambers*; the evidence, as the state courts found, was relevant and the trial court mitigated any prejudice by issuing limiting instructions.

A federal habeas court does not "reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68. In this case, the state court's evidentiary rulings, affirmed on appeal, did not constitute constitutional error that deprived the petitioner of a fundamentally fair trial. First, the evidence was relevant to issues at the trial, and to rebut the defense's claims. Moreover, through the trial, the trial court took steps to ameliorate the risk of unfair prejudice. The jury acquitted the petitioner of witness tampering, which has as an element instilling in the witness a fear that the actor will cause physical injury to the witness or another person, *see* N.Y.

Penal Law § 215.11, and convicted him of bribery, based on the evidence that he paid three witnesses $500 each after they made statements exonerating the petitioner's brother.

ii. Prosecutorial Misconduct.

The petitioner also claims that the prosecutor insinuated in summation that the petitioner played a role in Gibson's murder. (ECF No. 1 at 13-14.) The Appellate Division rejected this argument because it was "largely unpreserved for appellate review, since [the petitioner] failed to object to most of the challenged statements," *Harris*, 117 A.D.3d at 859 (citations omitted), and the Court of Appeals did not address it. The Appellate Division decided that the prosecutor's summation comments were proper "in any event." *Id.*

Federal courts are precluded from "review[ing] questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citation omitted)). When a state court's decision is based on independent and adequate state grounds, the claim is "necessarily beyond the reach of federal *habeas corpus* review" unless the petitioner can establish either cause and prejudice for the procedural default or that failure to consider the claim would result in a fundamental miscarriage of justice. *Brunson v. Tracy*, 378 F. Supp. 2d 100, 106 (E.D.N.Y. 2005) (citing *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) and *Coleman*, 501 U.S. at 750).

This is the case even when the state court also rules on the merits. "If a state court has found that a claim is unpreserved for appellate review and then ruled 'in any event' on the merits, this determination constitutes an adequate and independent procedural bar." *Roberts v. Smith*, No. 10-CV-4264, 2010 WL 5288198, at *2 (E.D.N.Y. Dec. 14, 2010) (citing *Glenn v.*

*Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

New York State's contemporaneous objection rule is an adequate and independent state ground for denying a claim. *Velasquez*, 898 F.2d at 9; *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (collecting cases). Accordingly, the petitioner's claim is procedurally barred unless he establishes cause for the default and prejudice, or demonstrates "that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 753). Cause can be established by showing that "'some objective factor external to the defense impeded counsel's efforts' to comply with the State's procedural rule." *Copeland v. Walker*, 258 F. Supp. 2d 105, 130 (E.D.N.Y. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citation omitted)). To establish prejudice, the petitioner must demonstrate a "reasonable probability" that the outcome of the trial would have been different but for the alleged violation. *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)). A miscarriage of justice occurs only in extraordinary cases, such as the conviction of a person who is actually innocent. *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlub v. Delo*, 513 U.S. 298, 321 (1995) (citation omitted)).

The petitioner has not asserted any cause for the procedural default or that denying this claim would result in a miscarriage of justice. Accordingly, his claim of prosecutorial misconduct is procedurally barred. In any event, the claim does not have merit. The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is "the

narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Thus, while the state has a "duty to refrain from improper methods calculated to produce a wrongful conviction," *Berger v. United States*, 295 U.S. 78, 88 (1935), habeas relief is warranted only if the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Darden*, 477 U.S. at 181 (quoting *DeChristoforo*, 416 U.S. at 643). The habeas court must consider the record as a whole when making this determination, because viewed in context, even inappropriate or erroneous comments or conduct may not undermine the fairness of proceedings. *See DeChristoforo*, 416 U.S. at 647-48 (distinguishing between "ordinary trial error of a prosecutor" and the type of "egregious misconduct . . . that amounts to the denial of constitutional due process") (internal citation omitted).

The Appellate Division rejected the petitioner's challenge to the summation, finding that the challenged remarks "were fair comment on the evidence [and] constituted a fair response to defense counsel's summation . . . ." *Harris*, 117 A.D.3d at 859 (citations omitted). This was not an objectively unreasonable application of clearly established law because the prosecutor's comments did not "so infect[] the trial with unfairness" that it deprived the petitioner of due process. *Darden*, 477 U.S. at 181 (citation omitted).

Moreover, the prosecution did not suggest that the petitioner killed Gibson or was involved in his murder. On the contrary, in responding to defense counsel's accusation that the prosecution, driven by "hysteria," was trying to pin Gibson's murder on the petitioner, the prosecutor told the jurors that there was no "evidence that [the petitioner was] behind the killing of Bobby Gibson." (Tr. at 807:14-15.) The prosecutor went on to say that only by speculation

could the petitioner be linked to the murder, in contrast to the evidence of his guilt in tampering with and bribing witnesses, which was "rock solid." (*Id.* at 808.) In short, the comments did not deprive the petitioner of due process.

iii. Harmless Error.

Even if there was an error that violated due process, habeas relief is not warranted unless the violation "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). That was not what happened here. As noted above, the jury acquitted the petitioner of the tampering charges that involved threatening conduct. And, the evidence that the petitioner bribed Edmonds, Smith and Hardison to change their accounts of the murder was overwhelming. Each witness testified to the petitioner's pattern of cultivating relationships with them in the months before his brother's trial; he bought them meals, gave them money and had a sexual relationship with at least one of them. They also testified, as did Michael Warren, Sykes' lawyer, that the petitioner took them to Warren's office, and sat with them as each gave a sworn, taped statement accusing someone else of the murder, and then paid each $500. The evidence established convincingly that the petitioner conferred benefits upon the witnesses who were to testify at a trial, "upon an agreement or understanding" that their testimony at trial would be influenced. *See* N.Y. Penal Law § 215.00. Accordingly, even if the petitioner had been denied due process, he is not entitled to habeas relief.

b. *Sentence*

The petitioner claims that his sentence as a persistent felony offender violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that the trial court based the sentence on an unproven allegation. (ECF No. 1 at 16, 18.) The Appellate

Division rejected the *Apprendi* claim as meritless, and the other claim as "unpreserved for appellate review . . . and, in any event, without merit." *Harris*, 117 A.D.3d at 859-60 (internal citations omitted).

As explained above, the petitioner's "unpreserved" claim is procedurally barred because the Appellate Division rejected it on the basis of an adequate and independent state ground. The petitioner has not asserted any cause or prejudice for the procedural default or that denying this claim would result in a miscarriage of justice.[10]

The Appellate Division's rejection of the *Apprendi* claim was not an objectively unreasonable application of *Apprendi* and its progeny. The Sixth and Fourteenth Amendments guarantee that in federal and state "criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI and XIV. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Accordingly, the *Apprendi* requirement does not apply when a judge determines whether a defendant has prior convictions in deciding to impose an enhanced sentence. *Id.* (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)); *see also S. Union Co. v. United States*, 567 U.S. 343, 346 (2012) ("The Sixth Amendment reserves to juries the determination of any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum potential sentence.") (citations omitted); *United States v. Booker*, 543 U.S. 220, 224 (2005) ("Any fact (other than a prior

---

[10] In any event, the claim is meritless. The trial court found that the petitioner was eligible to be sentenced as a felony offender because of his prior convictions. While Judge Demarest noted in the pre-sentence hearing that one of the petitioner's cases included a witness recantation (ECF No. 6-18 at 23:10-24:14), she based her decision on the petitioner's prior felony convictions. At the sentencing itself, the judge did not refer to this aspect of the earlier case.

conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.").[11]

Section 70.10 of the New York Penal Law permits enhanced sentencing for a defendant convicted of a felony having previously been convicted of two or more felonies. N.Y. Penal Law § 70.10(1)(a). Whether to apply the enhanced sentencing is discretionary; a court may sentence a defendant as a persistent felony offender when it is "of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct" warrant extended incarceration and life-time supervision. *Id.* at § 70.10(2). Under New York law, "*no additional factfinding beyond the fact of two prior felony convictions is required under Penal Law § 70.10 . . . .*" *People v. Rivera*, 5 N.Y.3d 61, 70 (2005) (citing *People v. Rosen*, 96 N.Y.2d 329, 335 (2001)).

Judge Demarest found that the petitioner was eligible to be sentenced under Section 70.10 because of his criminal record. (ECF No. 6-18 at 19:17-25:6.) The Appellate Division's decision that the sentence was consistent with *Apprendi* was a reasonable application of the Supreme Court's holdings in *Apprendi* and its progeny because New York's persistent felony offender statute—which imposes a sentencing enhancement on the basis of prior convictions alone—fits the well-settled exception for prior convictions.[12]

---

[11] The Supreme Court's subsequent decisions in *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004) and *Cunningham v. California*, 549 U.S. 270 (2007) did not overrule the *Almendarez-Torres* exception permitting judges to determine the fact of a prior conviction in deciding to impose an enhanced sentence.

[12] The Second Circuit has held that New York's persistent felony offender scheme is constitutional and consistent with *Apprendi*. *See Portalatin v. Graham*, 624 F.3d 69, 93-94 (2d Cir. 2010) (en banc). This decision is not controlling because only the holdings of the Supreme Court can be used as a yard stick to measure the constitutionality of state court decisions, but it is nevertheless additional support for the state court's decision.

Section 70.10(2) does not, as the petitioner maintains, authorize judicial factfinding beyond the fact of prior convictions. The New York Court of Appeals has interpreted the statutory directive to consider "the history and character of the defendant and the nature and circumstances of his criminal conduct" only after the judge determines the defendant's eligibility based solely on his criminal history. *Rivera*, 5 N.Y.3d at 66, 70-71. Since "state courts are the ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citations omitted), "[n]either this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State," *Johnson v. Fankell*, 520 U.S. 911, 916 (1975) (citations omitted). Accordingly, I am bound by the New York Court of Appeals' interpretation that Section 70.10(2) of the New York Penal Law does not authorize judicial factfinding beyond the fact of prior convictions.

Nor is New York's statute similar to the California statute invalidated in *Cunningham* as violating "*Apprendi*'s bright-line rule" by allocating factfinding to judges beyond prior convictions. *Cunningham*, 549 U.S. at 288. Indeed, the California statute authorized judges to impose an enhanced sentence only if they found additional facts, "circumstances in aggravation," not embodied in the judicial verdict. *Id.* at 277-78. The New York statute "creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history." *Portalatin*, 624 F.3d at 93-94.

c. *Ineffective Assistance of Trial Counsel*

The petitioner raised three of his claims for the first time in his *pro se* supplemental brief to the Appellate Division, where he alleged constitutional defects in the indictment, and that the conviction was against the weight of the evidence and not supported by legally sufficient evidence. (ECF No. 6-2 at 128-47.) The Appellate Division held that these claims were

22

"unpreserved for appellate review and, in any event, without merit."  *Harris*, 117 A.D.3d at 860. As discussed above, these claims are procedurally barred unless the petitioner establishes cause and prejudice or a miscarriage of justice excusing his procedural default.

The petitioner argues that his trial counsel's ineffectiveness excuses the procedural default of his third, fourth and fifth claims for habeas relief.  (ECF No. 9 at 70-71.)  Ineffective assistance of counsel can constitute "cause" to excuse a procedural default if the ineffectiveness "is *itself* an independent constitutional claim."  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Accordingly, before considering the petitioner's third, fourth and fifth claims for relief, I analyze the petitioner's sixth claim for relief: that his trial counsel was constitutionally ineffective.

The petitioner says that his lawyer should have objected to the hearsay testimony, to the court's failure to give the "oath of truthfulness" to prospective jurors and to certain of the prosecutor's summation comments.  (ECF No. 1 at 27.)  First, those grounds are entirely unrelated to the procedurally defaulted claims in his habeas petition.  Because the petitioner does not allege that his counsel was constitutionally ineffective in preserving his procedurally defaulted claims—relating to the indictment and the weight of the evidence (*see* ECF No. 9 at 70-71)—he cannot use his ineffective assistance of counsel claim as "cause" excusing his failure to preserve.

Second, as the petitioner concedes, he did not exhaust his ineffective assistance claim. The Supreme Court has held that "a claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Edwards*, 529 U.S. at 452 (quoting *Murray*, 477 U.S. at 488-89).

Accordingly, the ineffective assistance of counsel claim does not establish cause for the petitioner's procedural default of his third, fourth and fifth claims for habeas relief.

For the same reasons, the petitioner cannot obtain habeas relief in federal court on the ineffectiveness of counsel claim itself. Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "In doing so, a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) (citation omitted). A habeas petitioner who fails to meet the state's procedural requirements for presenting his federal claims "has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

An unexhausted claim is procedurally barred if the petitioner could have raised it on direct appeal, but did not. N.Y. Crim. Proc. Law § 440.10(2)(c). Thus, an unexhausted claim that a defendant failed to raise on appeal "should be deemed exhausted, because [it is] now procedurally barred from presentation to that court." *Grey*, 933 F.2d at 120.

The petitioner did not raise the ineffective assistance of counsel claim in any state forum, even though the facts underlying his claim appear in the trial record. Because Section 440.10(2)(c) of New York's Criminal Procedure Law prohibits relief on a claim that could have been raised on appeal, the petitioner's ineffective assistance of counsel claim is procedurally barred. When a petitioner "'failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts must deem the claims procedurally defaulted." *Aparicio*, 269 F.3d at 90 (quoting *Coleman*, 501 U.S. at 735 n.1). Accordingly, the petitioner's ineffective assistance of counsel claim itself is procedurally defaulted.

In any event, the ineffective assistance of counsel claim fails on the merits.  To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  The petitioner cannot satisfy either prong. As for the so-called hearsay testimony—that the witnesses heard that the petitioner was looking for them—the trial court overruled counsel's objection and admitted the statements for non-hearsay purposes.  (Tr. at 198:1-9, 322:1-13, 451:1-452:2.)  Second, the court clerk administered the oath to the prospective jurors, so there was no need to object.  (ECF No. 6-9 at 91.)  Finally, counsel did object to the prosecutor's summation and moved for a mistrial.  (Tr. at 823:1-11.)

As noted above, counsel secured an acquittal on the tampering counts.  In any event, the petitioner was convicted not because of some shortcoming on the part of his lawyer, but because of the strength of the evidence against him.  Accordingly, the ineffective assistance of counsel claim fails on the merits, which forecloses the petitioner from succeeding on the claim itself, and from using the claim to establish cause for the procedural default of claims three, four and five for habeas relief.

### d.  *The Indictment*

The petitioner makes two complaints about the indictment—that it was not sufficiently specific, which prevented him from mounting a defense and deprived him of due process, and that the trial court amended it by including the names of the witnesses he was alleged to have bribed in the final charge.  (ECF No. 1 at 20-24.)  This, the petitioner claims, denied him "his Constitutional Right to Due Process to Indictment by a Grand Jury" because the indictment returned by the grand jury had no names.  (*Id.* at 24.)

The Appellate Division rejected these claims as "unpreserved" on the basis of an adequate and independent state ground. Accordingly, the petitioner's claims about the indictment are procedurally barred.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted). Moreover, it is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Russel v. United States*, 369 U.S. 749, 770 (1962) (citing *Ex Parte Bain*, 121 U.S. 1 (1887), *United States v. Norris*, 281 U.S. 619 (1930) and *Stirone v. United States*, 361 U.S. 212, 215-16 (1960)) ("Ever since *Ex parte Bain* was decided in 1887, it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."). The Appellate Division's rejection of the petitioner's claims about the indictment was not an unreasonable application of these Supreme Court rules.

The charges in the indictment included the essential information—approximately when the crimes took place, the jurisdiction in which they occurred and the elements of the crimes charged. (ECF No. 6-2 at 155.) The prosecution later provided more detail in the Bill of Particulars, which informed the defendant the number of witnesses who were the targets of bribing and tampering, and the case in which the witnesses were expected to testify. (*Id.* at 157 ("These three people were witnesses on a murder case, The People of the State of New York v. Wesley Sykes . . . He paid all of them to lie and give statements to Sykes' defense counsel; stating that Sykes was not the shooter in his case.")).

Nor did Judge Demarest amend the indictment by referring in her final charge to the names of the witnesses. Including the names, a matter of form only, was necessary to differentiate the three separate counts each for the tampering and bribery charges, and was an appropriate application of the law to the facts.

e. *Legal Sufficiency and Weight of the Evidence*

The petitioner claims that the evidence did not establish that he "conferred, offered, or agreed to confer a benefit upon any of the witnesses or victims to influence their testimony at Wesley Sykes's trial." (ECF No. 1 at 26.)

These claims are procedurally barred because the Appellate Division rejected them on the basis of an adequate and independent state ground. In any event, the evidence that the petitioner bribed witnesses was more than sufficient. The Supreme Court has made clear that challenges to the sufficiency of evidence in a state court prosecution face a high bar in habeas proceedings because they are subject to two layers of judicial deference. *Parker*, 567 U.S. at 43 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (per curiam). First, because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial," *see Coleman*, 566 U.S. at 651 (citation omitted), a state court reviewing a jury's verdict of guilty must uphold it if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319. Second, on habeas review, "a federal court may not overturn a state decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (citation omitted).

Under New York law, a person is guilty of bribing a witness when he "confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced . . . ." N.Y. Penal Law § 215.00. The evidence at trial established that the petitioner showered the witnesses with money and gifts in an effort to get them to change their testimony in his brother's trial, and that he paid each $500 immediately after they recorded false statements recanting their prior statements identifying the petitioner's brother as the shooter. The jury credited the evidence and convicted the petitioner, which the Appellate Division affirmed. Any rational trier of fact could have found the petitioner guilty of bribing witnesses on these facts, so the Appellate Division's decision to affirm was not objectively unreasonable.

f. *Actual Innocence*

The petitioner alleges for the first time that he has new evidence demonstrating his innocence: two affidavits that purport to undermine the witnesses' testimony that certain people told them that the petitioner was dangerous and looking to speak with them. (ECF No. 1 at 31-33.) As the petitioner concedes, he did not raise this claim in state court (*id.* at 34), and it is unexhausted. *See Grey*, 933 F.2d at 119.

The petitioner could raise this claim in a Section 440.10 motion. *See People v. Hamilton*, 115 A.D.3d 12, 24-25 (2d Dep't 2014) ("New York is one of the minority of states which have no time limit for a motion to set aside a judgment of conviction based upon newly discovered evidence.") (citation omitted). Pursuant to *Rose v. Lundy*, 455 U.S. 509, 510 (1982), federal courts may dismiss "mixed petitions" with both exhausted and unexhausted claims. If I were to

dismiss the petition entirely, the petitioner could not re-file a federal habeas petition because the one-year AEDPA statue of limitations already has run. *See* 28 U.S.C. § 2244(d)(1).

"[I]f dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief," a habeas court reviewing a mixed petition "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims . . . ." *Rhines v. Weber*, 544 U.S. 269, 278 (2005) (citation omitted). Thus, the petitioner would either have to delete his unexhausted claim, and have me review the balance of his petition, or the entire petition would have to be dismissed, and the petitioner would have no federal review of his claims. I assume that the petitioner would prefer his unexhausted claim deleted and his other claims reviewed. Accordingly, I treat the unexhausted claim for actual innocence as if the petitioner had deleted it. *See Johnson v. Kirkpatrick*, No. 11-CV-1089, 2011 WL 3328643, at *14 (S.D.N.Y. Aug. 3, 2011).

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety. The claim for actual innocence is deleted from the petition. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

                                          **s/Ann M. Donnelly**
                                          _____
                                          Ann M. Donnelly
                                          United States District Judge

Dated: Brooklyn, New York
       March 23, 2020